**From:** mattchannon@pm.me <mattchannon@pm.me>
**Sent:** Thursday, September 24, 2026 6:45 AM
**To:** paul.mysliwiec@usdoj.gov; Maxwell Pines <max@maxpineslaw.com>; NMDml_Magistrate Judge Fashing's Chambers nmd.uscourts.gov <FashingChambers@nmd.uscourts.gov>
**Subject:** Fwd: Counseling World Assessment — Document 13, Speedy Trial, Representation, and Related Matters

**CAUTION - EXTERNAL:**

Paul, Max, and Magistrate Judge Fashing,

I have been thinking carefully about how to address several matters that need attention before November 5, and I want to be as straightforward as possible.

Please find attached the Counseling World assessment sought by Document 13, forwarded from Senior U.S. Probation Officer Anthony Carter.

It reflects that I was oriented to person, place, and time; appropriately groomed; speaking normally; euthymic in mood; intact in memory, attention, concentration, thought process, perception, and functional status; and that I denied all areas of risk with "no contrary clinical indications present."

That appears materially different from the competency concerns used to justify Document 13.

Paul, now that the assessment is in your hands, will the United States withdraw Document 13? If not, what relief does the Government still seek, and on what present factual basis?

I also need clarity on the Speedy Trial consequences of that motion. It was fully briefed months ago. If the Government still contends that Document 13 requires a hearing under 18 U.S.C. § 3161(h)(1)(D), I would appreciate knowing that. If it does not, I would appreciate knowing when the Government contends the matter became "under advisement" for purposes of § 3161(h)(1)(H), and what thirty-day period the Government believes followed.

I am also attaching two pages from a City of Albuquerque IPRA production. Those pages document the August 29, 2025 communication in which AUSA C. Paige Messec generated the threat narrative later relied upon in this case. I would prefer that everyone see the underlying record rather than rely on competing descriptions of it.

**Representation**

I recorded my most recent in-person meeting with Max. What follows is drawn from that recording.

At approximately 3:14, I told Max directly:

Me: "I don't trust you."

A few minutes later, Max said:

Max: "I disagree that I haven't looked at your case, and I certainly have. I put a lot of time into it already."

We then discussed the set of materials we had been calling the "sandwiches":

Me: "You could have not looked at all the sandwiches and that'd be fine. Say, 'Hey, I didn't look at them.' But you said you looked at them. That is the problem."

Max: "I did look all at the sandwiches though."

Max: "I didn't get to the last one though. That's true."

Me: "Well, then you didn't look at all the sandwiches."

Max: "No, I didn't look at all the sandwiches."

At approximately 19:41, while we were discussing why I did not want to proceed pro se and my concern that important motions might never reach a judge, Max said:

Max: "From my point of view, they might not be very strong and the judge might punish the attorney for filing a… motion that they see as unmeritorious. So you don't get like a hearing or something."

Shortly afterward, Max described the attorney-client relationship this way:

Max: "I felt like [you'd] been attacking me from the start."

Max: "Even from the first call… I did not feel like you wanted to really hear what I had to say, and you were distrustful of me."

Max: "I feel just really unhappy about the whole scenario."

I said:

Me: "Well, I want to apologize for making you feel that way. Any new attorney I get, I want to start off on the best foot with them. I'm not going to invalidate your feelings — no "I'm sorry you feel that way." I am sorry I made you feel that way. It's counterproductive for me to make anybody feel that way and I never want to do that. So again, please accept my sincere apology for making you feel unwelcome or attacked."

Max: "All right. Well, yeah. Okay. Well, I guess we cleared the air a little."

Me: "Well, yeah. I don't want you feeling like I hold a grudge. Anybody who's going to put their life on the line—"

At approximately 30:03, Max said:

Max: "I'm not coming out and pretending that I've done any federal trials. I have not. I've done maybe 89 state trials."

Finally, at approximately 58:09, while discussing what appears to be central trial evidence, Max said:

Max: "I haven't seen like the original video of you, but I guess the way I look at it is… I like the fact that you videotaped it because it makes it seem like you're not really trying to get the gun. You're not trying to trick anyone…"

Those five points are why "demanding client" does not accurately capture the representation issue. I have tried to address these concerns directly and professionally, and I remain willing to do so. What I do not believe is compatible with adequate representation is continuing without some meaningful change in the representation structure.

There are also several concrete filing and access issues:

Max filed CR Document 49 — a motion seeking referral of my conditions motion to a magistrate judge — without my knowledge or consent. This motion concerns conditions of release that were before the district judge assigned to this case. CR Document 49 purports to route that question away from Judge Garcia and to a magistrate judge, without my knowledge or consent.

I do not have Document 51. On September 20, I asked Max for a copy. I have not received a response.

Max had previously emailed me:

"I wanted to let you know that I filed last week an exparte motion for second chair for Don Kockerberger. I submitted a proposed order also. I spoke with Judge Garcia's TCAA and she said she had received it and they would act soon."

Document 52 later identifies Document 51 as my "Ex Parte Motion for Appointment of Additional Counsel."

Max, how did a filing you told me had been received by Judge Garcia's TCAA and on which "they would act soon" come to be decided by Magistrate Judge Fashing?

If the motion you described in that email is not the same filing as Document 51, what is Document 51, and what happened to the second-chair motion you told me had been submitted to Judge Garcia's chambers?

Document 52 states that Document 51 will remain sealed because it contains attorney work product and potential trial strategy. I still have not been permitted to see Document 51, even though I am the defendant whose representation and trial strategy it discusses.

Document 52 then states that "This Order" will remain under seal and will not be served on the United States for fourteen days so that "Defendant" may decide whether to seek continued sealing. Document 52, however, is already publicly accessible through CourtListener — it is the document I am quoting from now. If the fourteen-day sealing provision was meant to protect Document 51 rather than Document 52, that would explain the confusion, and a statement of errata or corrected order identifying Document 51 as the subject of the fourteen-day provision would resolve it.

As written, the order purportedly protecting my right to seek continued sealing of a document I

cannot read refers, by its own terms, to a document that anyone with a PACER account can already download.

There is also Document 10, designated attorneys-eyes-only. When I asked the Clerk's Office whether I could see it as a party to the case, I was told: "that's the information I've been given to follow." No attorney has provided or has been willing to provide me a copy under any mechanism.

Multiple documents in my own criminal case remain inaccessible to me. At least one was filed in my name.

I am raising all of this because I believe these questions deserve clear answers before November 5. I care about these proceedings going well, and I believe — as I expect everyone here does — that the best way to accomplish that is to keep the process faithful to the constitutional protections governing it.

Matt Channon

7100 Gladden Ave NE

Albuquerque, NM 87110

505-288-5566

mattchannon@pm.me

*Attachments: (1) July 7, 2026 Carter email transmitting Counseling World Assessment; (2) Counseling World Intake Note; (3) August 29, 2025 Messec/USMS communication — two-page IPRA excerpt*

------- Forwarded Message -------
From: mchannon@hushmail.com <mchannon@hushmail.com>
Date: On Wednesday, September 23rd, 2026 at 8:58 PM
Subject: Fwd: Counseling World Assessment
To: mattchannon@pm.me <mattchannon@pm.me>

Sent using Hushmail

----- Forwarded message from "Anthony Carter" <Anthony_Carter@nmp.uscourts.gov> -----
Date: 7/7/2026 at 8:13 AM
Subject: Counseling World Assessment
To: "mchannon@hushmail.com" <mchannon@hushmail.com>




**Anthony L. Carter**
Senior United States Probation
Officer
District of New Mexico
**Office:** (505) 348-2685
**Mobile:** (505) 947-6617

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**From:** mattchannon@pm.me <mattchannon@pm.me>
**Sent:** Thursday, September 24, 2026 7:00 AM
**To:** paul.mysliwiec@usdoj.gov; Maxwell Pines <max@maxpineslaw.com>; NMDml_Magistrate Judge Fashing's Chambers nmd.uscourts.gov <FashingChambers@nmd.uscourts.gov>
**Subject:** Contemporaneous AI record bearing on knowledge and state of mind — evidence bearing on the knowledge element

**CAUTION - EXTERNAL:**

Paul, Max, and Magistrate Judge Fashing,

On March 31, 2026 — the day before the charged transaction — I was already discussing 18 U.S.C. § 922(a)(6), my firearm status, the contemplated transaction, and the legal risk surrounding it with generative AI systems, including Anthropic Claude and OpenAI ChatGPT.

These logged conversations occurred before the April 1 transaction and therefore preserve a contemporaneous record of what information I was receiving, what I was asking, and how I was reasoning about the legal issue before acting. The conversations are timestamped, and I am preserving the copies available to me in a form that may permit later authentication. Provider-side records may also exist.

I am not offering either AI system as legal authority, and I am not suggesting that an AI response could make otherwise unlawful conduct lawful.

The relevance is different.

When these systems identify proposed conduct as potentially criminal, they warn me away from it. Anthropic Claude, thoroughly briefed on the situation, encouraged me to proceed with the April 1 transaction.

Whether an AI system was legally correct is not the point. The point is what information I actually received before the charged conduct and what that contemporaneous record shows about my then-existing state of mind — a record that predates any possible motive to fabricate an explanation after arrest.

Paul, the Government is hereby on notice that this contemporaneous record exists, that I regard portions of it as potentially exculpatory on the knowledge element of § 922(a)(6), and that the obligation to preserve and to disclose material favorable to the defense attaches from the moment of this notice. I trust this will allow any preservation, authentication, discovery, or evidentiary issues surrounding these records to be addressed well before trial, rather than become a matter of dispute on the eve of it.

There is a broader dimension to this evidence that justice requires not be overlooked.

Generative AI conversations are becoming a new category of evidence in American courts. A pre-offense dialogue in which a defendant discusses the precise legal risk later charged presents questions that have not yet been fully resolved: authentication, provider records, completeness, effect on the listener, then-existing state of mind, and the distinction between offering AI output for the truth of its legal propositions and offering it to establish what a human being actually received and considered before acting.

The questions this record presents go directly to what I knew and believed before April 1, and they are ones no circuit has yet resolved. This will, if allowed to proceed to trial, become a case of public interest.

The indictment may contain one count, but the evidentiary and constitutional questions raised by a pre-offense human-AI deliberative record on the charged statute are not ordinary. They are questions courts, litigants, AI providers, and the public have increasing reason to care about. That is relevant to whether this case is as straightforward in preparation as it may appear on its face.

Max, I need to know whether you intend to:

obtain and review the complete relevant March 31 and April 1 AI history;

preserve it in the most authenticatable form reasonably available;

determine whether provider records or other authentication evidence should be sought;

evaluate its use in pretrial motion practice as evidence of my then-existing state of mind and the information I had received before acting; and

evaluate its use at trial under the same framework, and determine whether the distinction between offering AI output for the truth of its legal propositions and offering it to establish what I actually received and considered is one that needs to be briefed before the jury is seated.

Cases that require courts to define the evidentiary treatment of human-AI deliberation for the first time do not come along often. The jurist who gets this one right will have done something worth remembering.

Matt Channon

7100 Gladden Ave NE

Albuquerque, NM 87110

505-288-5566

mattchannon@pm.me

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

---

**From:** mattchannon@pm.me <mattchannon@pm.me>
**Sent:** Thursday, September 24, 2026 7:15 AM
**To:** paul.mysliwiec@usdoj.gov; Maxwell Pines <max@maxpineslaw.com>; NMDml_Magistrate Judge Fashing's Chambers nmd.uscourts.gov <FashingChambers@nmd.uscourts.gov>
**Subject:** Attempted MJ filing September 22, 2026 — receipt without docketing and routing to chambers

**CAUTION - EXTERNAL:**

Paul, Max, and Magistrate Judge Fashing,

On September 22, 2026, I personally tendered four motions at the United States District Court Clerk's Office in Albuquerque under No. 1:26-mj-01630-SCY.

On both occasions I dealt with Deputy Clerk Denisse Romero. During the morning visit, Ki'ahn Wild was involved as a supervisor. During the afternoon visit, Nicole Gastner was involved.

On both visits, I was initially told the motions could not be accepted because I am represented by counsel, with D.N.M.LR-Cr. 44.2 identified as the reason.

During the second visit, I showed Ms. Romero and Ms. Gastner a printed copy of Federal Rule of Criminal Procedure 49(b)(5), with the following language highlighted:

"The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."

The four papers were eventually stamped "RECEIVED." I was told only that they would be "routed to chambers."

As of this email, I have not seen a docket entry, ruling, rejection notice, or other notice identifying their present filing status.

The clerk personnel also took the position that the MJ and CR proceedings were effectively the same case for filing purposes, notwithstanding their separate docket numbers and separate records.

That matters because one of the papers tendered on September 22 is titled:

*Defendant's Motion to Clarify Representation Status in This Proceeding, Terminate Any Continuing Appointment of Daniel B. Snyder, and Determine Representation Going Forward.*

Rule 44.2 expressly permits a represented defendant to file certain papers personally, including a

motion for new counsel, a motion seeking self-representation, and a notice of appeal.

That motion asks the Court to determine who presently represents me in this proceeding, terminate any continuing appointment of Daniel B. Snyder, identify the operative appointment record, determine representation going forward, and address the accompanying package once that threshold issue is resolved.

It is therefore difficult to understand how that particular filing could be rejected solely because I am represented when it seeks precisely the kind of representation-related relief Rule 44.2 expressly contemplates.

The September 22 package also contains motions challenging the participation of judicial officers, including Magistrate Judge Fashing. I am copying her chambers directly so the record reflects her receipt of notice that a motion challenging her participation was physically tendered to the Clerk's Office on September 22, stamped "RECEIVED," routed to chambers, and has not appeared on the docket.

Three narrow points require clarification.

First, I need the Court's position on the filing status and filing date of the four September 22 papers.

Second, if the motion titled above is being rejected under Rule 44.2, I would ask that the specific language authorizing that rejection be identified, because the rule as written appears to except precisely this category of filing.

Third, if the papers were accepted for filing when stamped "RECEIVED," the docket should reflect their September 22 receipt date.

Matt Channon

7100 Gladden Ave NE

Albuquerque, NM 87110

505-288-5566

mattchannon@pm.me

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.