FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

SEP 28 2026

ERIK PALTROW
CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **No. 1:26-CR-02056-MLG**

**MATTHEW JAMES CHANNON,**

**Defendant.**

**DEFENDANT'S MOTION SEEKING SELF-REPRESENTATION UNDER D.N.M.LR-CR. 44.2 AND *FARETTA v. CALIFORNIA* (IN THE ALTERNATIVE TO APPOINTMENT OF SUBSTITUTE COUNSEL)**

Defendant Matthew James Channon moves for self-representation under D.N.M.LR-Cr. 44.2 and Faretta v. California, 422 U.S. 806 (1975), in the alternative to the substitute counsel requested in LCR1. If the Court grants LCR1 and appoints substitute counsel, this motion may be treated as moot. If the Court denies LCR1, Defendant unequivocally elects to represent himself rather than continue toward trial represented by Maxwell H. Pines and requests the required Faretta hearing, with standby counsel if the Court permits self-representation.

This motion also identifies the judicial-participation and recusal matters Defendant intends to litigate if he is permitted to proceed pro se. Those matters were physically tendered to the Clerk on September 21, 2026, but have not appeared on the public docket. Defendant does not ask the Clerk to treat a freestanding recusal motion as an independent Rule 44.2 exception while he remains represented. He asks the Court to preserve those issues, complete the Faretta process if LCR1 is denied, and then permit them to be filed and

adjudicated in the ordinary course once his pro se status is established.

## I. THIS MOTION INVOKES THE SELF-REPRESENTATION EXCEPTION IN RULE 44.2

D.N.M.LR-Cr. 44.2 expressly permits a represented defendant to file a motion seeking self-representation. LCR1 invokes the separate new-counsel exception; this motion invokes the self-representation exception and becomes operative if LCR1 is denied.

The request is conditional only in the ordinary sense that Defendant prefers substitute counsel if LCR1 is granted. If that relief is denied, however, Defendant's election is explicit: he seeks to proceed pro se rather than continue with Mr. Pines. The Tenth Circuit requires a clear and unequivocal assertion of the intention to represent oneself before *Faretta* is triggered. See *United States v. Simpson*, 845 F.3d 1039, 1046–47 (10th Cir. 2017); *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006). Defendant therefore states that election expressly and asks the Court to conduct the required inquiry rather than infer waiver from filing activity or dissatisfaction with counsel.

## II. THE DISTRICT ITSELF PREVIOUSLY TREATED JUDGE ROBBENHAAR'S REPRESENTATION OF DEFENDANT IN 966 AS AN INSTITUTIONAL RECUSAL PROBLEM

On February 24, 2020, Chief United States District Judge William P. Johnson entered an Order of Recusal in Channon v. United States, No. 1:19-cv-00200. The order stated that Magistrate Judge John F. Robbenhaar had served as former counsel to Matthew Channon in the criminal docket whose conviction

was being challenged, No. 1:13-cr-00966. Under those circumstances, Chief Judge Johnson ordered all judicial officers of the District of New Mexico recused and designated then-Chief Circuit Judge Timothy M. Tymkovich under 28 U.S.C. § 291(b). Ex. 1.

Defendant does not argue that the 2020 order automatically controls every future case. Its significance is that the District already confronted this precise former-counsel relationship when adjudication centered on the 966 conviction and chose an outside judicial officer rather than serial local reassignment.

The present prosecution again makes 966 material. The indictment alleges a false statement concerning Defendant's felony status, and the Government identifies the 966 conviction as the predicate felony. The prior representation is therefore not disconnected biography. The legal existence and significance of 966 are part of the factual architecture of the charged offense.

## III. JUDGE ROBBENHAAR WAS ACTUALLY NOTICED TO ARRAIGN HIS FORMER CLIENT IN THIS PROSECUTION

On May 4, 2026, CM/ECF issued a Notice of Hearing setting Defendant's May 7 arraignment before Magistrate Judge Robbenhaar. Snyder forwarded the notice to Defendant and wrote that, 'ironically the judge will be your former trial counsel Judge Robbenhaar.' Ex. 2.

Defendant immediately asked Snyder about a recusal motion because Robbenhaar had represented him in the 966 prosecution on which the present felony-status allegation depends. Snyder did not dispute the prior representation. He responded in substance that an arraignment would be of little consequence

because the judge would not make substantive rulings. The May 7 arraignment ultimately occurred before Magistrate Judge Karen B. Molzen instead.

The public record identified by Defendant contains no recusal motion, recusal order, or other public disposition explaining the change from the noticed Robbenhaar arraignment to Molzen. Section 455(a) is not limited to dispositive hearings; it applies to 'any proceeding' in which impartiality might reasonably be questioned. The unexplained switch matters particularly because the District had already treated the same former-counsel relationship as institutionally significant in 2020.

Defendant preserves the request that Judge Robbenhaar take no further part in CR-2056 or any unresolved matter originating in MJ-01630. If LCR1 is denied and the Court grants this motion for self-representation, Defendant intends promptly to present that request in a procedurally proper pro se filing. The issue is described here so the Court understands one of the threshold matters Defendant seeks the ability to litigate personally.

## IV. THE MOLZEN/ROBBENHAAR CALENDAR SEQUENCE AND SNYDER'S ACCOUNT REMAIN UNEXPLAINED

Before the May 7, 2026 arraignment, Snyder told Defendant that Judge Molzen would take Defendant's matter first and Judge Robbenhaar would handle the remainder of the calendar. Judge Molzen did take Defendant's matter, and Defendant recalls her stating from the bench that it was her 'last day.' Defendant left after his own case and does not claim firsthand knowledge of the remainder of the calendar.

On May 11, Snyder then wrote that 'Molzen is retired and Robbenhaar is on the duty bench for the remainder of this week.' Yet the public docket in United States v. Martinez, No. 1:26-cr-02062-KWR, shows Judge Molzen entering an Order Setting Conditions of Release on May 18, 2026. Ex. 2. Defendant does not ask the Court in LCR2 to decide what explains that discrepancy. He preserves the specific chronology because it bears on how the noticed Robbenhaar arraignment was diverted without a public recusal disposition. The fuller assignment and recusal argument is reserved for LCR3.

## V. MAGISTRATE JUDGE YARBROUGH PRESENTS A PRESERVED § 455 ISSUE

Magistrate Judge Steven C. Yarbrough presided over Defendant's April 9 initial appearance. The 966 record also contains an October 24, 2013 USAO discovery response identifying Yarbrough as Acting United States Attorney above AUSA C. Paige Messec's signature while the predicate prosecution was active, and Defendant later litigated the LibDib civil action before Judge Yarbrough shortly before the present arrest. Defendant preserves the resulting § 455(a) issue without asking LCR2 to decide it. The full Yarbrough record, including the Acting-USA overlap and the later civil-case medical-authorizations history, is reserved for LCR3. Ex. 4.

## VI. MAGISTRATE JUDGE FASHING PRESENTS A SEPARATE PRESERVED § 455 ISSUE

Magistrate Judge Laura Fashing previously served in the D.N.M. USAO, including as Appellate Chief, while former 966 prosecutor C. Paige Messec later

served in the same appellate function and appears in later USAO/USMS history concerning Defendant. Judge Fashing has since participated in representation and other post-indictment matters and issued the September 24 directive through counsel. Defendant preserves the resulting § 455(a) issue; the full factual and legal argument is reserved for LCR3.

## VII. THE KHALSA / ROBERT CJA OVERLAP IS PRESERVED FOR LCR3

Former Magistrate Judge Kirtan Khalsa and Marc H. Robert, Defendant's former 966 counsel, previously served together in formal District CJA-administration roles, while Robert has also been identified in a Circuit-level CJA budgeting role. Defendant does not contend that those relationships establish categorical bias. He preserves them because they bear on both recusal analysis and the structure of any standby or replacement counsel. Full briefing is reserved for LCR3. Ex. 6.

## VIII. THE RECUSAL ISSUES ARE PRESERVED, NOT LITIGATED TO COMPLETION HERE

The federal judicial disqualification statute expressly reaches magistrate judges. 28 U.S.C. § 455(a) requires disqualification in any proceeding in which a justice, judge, or magistrate judge's impartiality might reasonably be questioned. Section 455(b) separately identifies specific circumstances, including prior service as a lawyer in the matter in controversy and certain participation in government employment. Section 455(a) protects public confidence in the judiciary and is concerned with the appearance of partiality, not only proof of actual bias. See

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 858–60, 864–65 (1988). The Tenth Circuit accordingly applies an objective reasonable-observer inquiry under § 455(a). *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993); see also *Nichols v. Alley*, 71 F.3d 347, 350–51 (10th Cir. 1995). Defendant also recognizes the complementary principle that § 455(a) does not authorize recusal on the basis of unsupported speculation or as a vehicle for judge-shopping. See *Nichols*, 71 F.3d at 351.

Section 455(a) asks whether impartiality might reasonably be questioned from the perspective of an objective, fully informed observer. The preserved record includes four distinct relationships: Robbenhaar previously represented Defendant in 966 and the District responded to that relationship with district-wide recusal in 2020; Yarbrough served as Acting United States Attorney while 966 was active and later presided over Defendant's current initial appearance; Fashing's former USAO appellate leadership overlaps institutionally with Messec's later appellate role and the subsequent USAO/USMS history concerning Defendant; and the Khalsa/Robert CJA relationship bears on the structure through which counsel is appointed and administered. LCR2 does not ask the Court to adjudicate those merits in full. The issues are preserved, and the complete § 455 briefing is reserved for LCR3.

## IX. CURRENT COUNSEL'S FAILURE TO PRESENT THESE QUESTIONS EXPLAINS WHY THE ALTERNATIVE FARETTA REQUEST IS REAL RATHER THAN THEORETICAL

Defendant raised the Robbenhaar conflict with Snyder before the May 7 arraignment. The issue was not formally litigated. Defendant later developed a

broader recusal record, including the 2020 district-wide order, the Yarbrough materials, the Fashing/Messec history, the Molzen/Robbenhaar assignment sequence, and the CJA-administration overlap. He attempted to tender that record on September 21. Current counsel has not presented it. That recusal record is not the only example: counsel has similarly not investigated the documented USMS/prosecutorial coordination chain from the period preceding the present arrest—including the AUSA Messec-initiated USMS contact referencing 966, the APD-to-USMS coordination emails, and the Central Desert Behavioral Health records showing that Defendant's psychiatric discharge was conditioned on USMS clearance and that prophylactic intramuscular olanzapine was ordered to prevent flight. Ex. 3. That history is not the kind of thing an independent defense lawyer forgets to examine. The public MJ docket's apparent ending at Document 13 likewise cannot establish that no later sealed, restricted, administrative, or merged entries exist. Defendant does not assert that such entries must exist; he preserves the narrower request that the Court identify any nonpublic procedural event that affected assignment, recusal, representation, Document 13, release conditions, or the MJ-to-CR transition without disclosing protected substance.

During the recorded meeting, Mr. Pines stated that from his point of view some motions might not be strong and that a judge might 'punish the attorney' for filing a motion the judge sees as unmeritorious. Defendant understands counsel's ethical obligation to screen claims. But where the unfiled claims concern the participation of the same judicial officers before whom counsel practices, that stated concern materially undermines Defendant's confidence that

the claims are being rejected on detached legal analysis rather than institutional caution.

If the Court grants LCR1, independent substitute counsel can review these materials and determine what § 455 relief professional judgment supports. If the Court denies LCR1, Defendant seeks to make that litigation decision himself. That is the function of this alternative Faretta motion: not to obtain a second ruling on replacement counsel, but to define what Defendant chooses if replacement counsel is refused.

## X. IF SUBSTITUTE COUNSEL IS DENIED, DEFENDANT CLEARLY AND UNEQUIVOCALLY ELECTS SELF-REPRESENTATION

Defendant's hierarchy of requested relief is explicit. First, he asks for substitute counsel in LCR1. If the Court grants LCR1, this alternative self-representation request may be denied as moot without prejudice. If the Court denies LCR1, Defendant does not consent to continued representation by Mr. Pines. He elects to represent himself and asks for the formal Faretta inquiry required before counsel is discharged.

The Tenth Circuit requires a defendant seeking self-representation to clearly and unequivocally inform the district court of that intention, make the request in a timely manner and not for purposes of delay, knowingly and intelligently waive counsel after a comprehensive inquiry, and be able and willing to follow courtroom procedure. See *United States v. Simpson*, 845 F.3d 1039, 1046–47 (10th Cir. 2017); *United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006). Those requirements implement *Faretta's* requirement that the defendant

be made aware of the dangers and disadvantages of self-representation before the waiver of counsel is accepted. *Faretta*, 422 U.S. at 835. Defendant requests precisely that inquiry. This motion is filed before trial and is not intended to obtain delay; it is intended to resolve representation before further substantive litigation and trial preparation proceed.

If self-representation is permitted, appointment of standby counsel is consistent with *Faretta*, provided the defendant retains actual control of the defense and standby counsel does not substantially interfere with significant tactical decisions or undermine the jury's perception that Defendant is representing himself. See *McKaskle v. Wiggins*, 465 U.S. 168, 178–79 (1984). Defendant therefore requests standby counsel as assistance to self-representation, not as continuation of hybrid representation by present counsel.

## XI. THE SEPTEMBER 21 SECTION 455 ISSUES SHOULD BE PRESERVED PENDING THE FARETTA DETERMINATION

Defendant states the preserved recusal requests here so they cannot be misunderstood as abandoned. If the Court grants self-representation, Defendant intends to file or renew requests that: (1) Magistrate Judge Robbenhaar take no further part in CR-2056 or unresolved matters originating in MJ-01630; (2) an express § 455(a) determination be made concerning any further participation by Magistrate Judge Yarbrough; (3) an express § 455(a) determination precede further participation by Magistrate Judge Fashing in release, mental-health, representation, or other matters materially intertwined with the Messec/USAO/USMS chain and the September 24 directive; (4) to the extent any

matter remains assigned or referred to former Magistrate Judge Khalsa, a threshold § 455 determination precede further participation; and (5) a judicial officer not implicated by the former-counsel relationship consider whether the 2020 institutional rationale warrants broader district-wide recusal and outside designation under 28 U.S.C. § 291(b).

Defendant asks that the Court neither deem those issues abandoned nor require him to communicate them informally through chambers. If LCR1 is granted, substitute counsel can evaluate them. If LCR1 is denied and this Faretta motion is granted, Defendant asks leave to present them himself promptly after the representation order is entered. To the extent the Court elects to reach a threshold § 455 question as ancillary to deciding who may preside over the Faretta process itself, Defendant asks for an express, reviewable ruling.

## XII. REQUESTED RELIEF

Defendant respectfully requests that the Court: (1) first resolve LCR1, Defendant's separately filed motion for substitute counsel; (2) if LCR1 is granted, treat this alternative self-representation request as moot without prejudice; (3) if LCR1 is denied, conduct a prompt Faretta hearing and permit Defendant to proceed pro se rather than continue represented by Maxwell H. Pines; (4) if self-representation is permitted, appoint standby counsel with substantial federal criminal experience and, if practicable, sufficient structural independence to avoid the predecessor-counsel and CJA relationships identified in the record; (5) order present counsel to deliver the complete defense file and provide whatever access mechanism is lawful for sealed or protected materials Defendant must

understand to represent himself; (6) preserve the September 21 recusal issues and permit Defendant to file or renew them promptly upon entry of a pro se order; (7) to the extent necessary to determine who should conduct the Faretta hearing or rule on this motion, obtain any threshold § 455 determination required by the documented former-counsel and judicial-participation history; and (8) grant such other self-representation-related relief as the Court deems appropriate.

Pursuant to D.N.M.LR-Cr. 47.1, Defendant cannot meaningfully obtain concurrence from present counsel on a motion asking to terminate counsel's representation if LCR1 is denied and to allow Defendant to proceed pro se. The Government's position is unknown. Defendant requests a hearing because Faretta requires an on-the-record inquiry before a waiver of counsel is accepted.

Respectfully submitted,

Matthew James Channon
Defendant, personally filing under D.N.M.LR-Cr. 44.2
7100 Gladden Ave NE
Albuquerque, NM 87110
505-288-5566
mattchannon@pm.me

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, I served a true and correct copy of the foregoing Motion Seeking Self-Representation under D.N.M.LR-Cr. 44.2 and *Faretta v. California*, together with its exhibits, by first-class United States Mail, postage prepaid, upon Maxwell H. Pines, counsel of record for Defendant, and Paul Mysliwiec, counsel for the United States, at their addresses of record.

I also submitted the original filing to the Clerk of the United States District Court. Upon docketing, registered counsel will additionally receive the Court's CM/ECF notice of filing and electronic access to the docketed papers. That electronic notice is supplemental to, and is not relied upon as a substitute for, the service certified above.

Matthew James Channon

## EXHIBIT INDEX (EXHIBITS FILED SEPARATELY)

| Ex. | Source | Contents / significance | pp. |
|---|---|---|---|
| 1 | 2020 district-wide recusal sequence | February 24, 2020 Order of Recusal in *Channon v. United States*, No. 1:19-cv-00200, together with the relevant docket sequence. Documents district-wide recusal arising from Magistrate Judge Robbenhaar's prior representation of Defendant in 1:13-cr-00966 and resulting outside designation. | 2 |
| 2 | Robbenhaar / Snyder / Molzen chronology packet | May 4 Snyder correspondence and Robbenhaar arraignment notice; May 11 Snyder email stating Molzen was retired and Robbenhaar was on the duty bench; and May 18, 2026 *Martinez* material showing Judge Molzen continuing to exercise judicial authority. | 7 |
| 3 | Messec / USMS / APD / Central Desert chain | August 2025 IPRA material showing AUSA Messec contacting USMS and referencing 13-CR-966; APD-to-USMS coordination concerning guards; redacted Central Desert record concerning USMS clearance for discharge; and physician note concerning prophylactic IM olanzapine if Defendant attempted to flee. | 5 |
| 4 | Yarbrough / 966 / LibDib selected record | Complete four-page October 24, 2013 USAO discovery response in 1:13-cr-00966 identifying Steven C. Yarbrough as Acting United States Attorney above AUSA C. Paige Messec's signature, followed by four selected pages from *Channon v. Liberation Distribution LLC*, No. 1:24-cv-01124-WJ-SCY, documenting Judge Yarbrough's more recent participation and relevant medical/mental-health-related proceedings. **Highlight added to page 6.** | 8 |
| 5 | Tenth Circuit No. 19-2029 Kelly / outside-counsel record | Doc. 81 initial recusal disposition; **complete seven-page Doc. 85 renewed recusal motion by Colorado AFPD Grant R. Smith; complete six-page Doc. 92 Government response signed by AUSA C. Paige Messec; and Doc. 99 denial order.** Offered as the prior record of outside-counsel appointment and counseled recusal litigation. | 15 |
| 6 | Khalsa / Robert CJA-administration material | D.N.M. administrative-order material reflecting then-Magistrate Judge Khalsa and Marc H. Robert serving together in formal CJA Panel Committee roles, together with Federal Defender Services/EBA material concerning Robert's Circuit-level CJA budgeting role. Offered for the structural-independence component of the requested standby-counsel arrangement. | 2 |

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SELF-REP
EXHIBIT 1
Order of recusal
9/25/2026

IN THE MATTER OF:
RECUSAL OF ALL UNITED STATES JUDGES
FOR THE DISTRICT OF NEW MEXICO

19-CV-00200-JCH-KBM

**ORDER OF RECUSAL**

In the criminal docket of the case in which the federal judgment of conviction is challenged under 28 U.S.C.§ 2555, 13-CR-00966-JCH-SMV, the Honorable John F. Robbenhaar, United States Magistrate Judge, served as former counsel to party, Matthew Channon. Under the circumstances, it is appropriate for all judicial officers for the District of New Mexico to recuse in Case No. 19-CV-00200-JCH-KBM. Chief Circuit Judge Timothy M. Tymkovich, of the United States Court of Appeals for the Tenth Circuit, has consented to the designation and assignment as presiding judge in this case.

**IT IS THEREFORE ORDERED THAT:**

1. All judicial officers of the District of New Mexico recuse in this action; and
2. Pursuant to the designation and provisions of Title 28, United States Code § 291(b), the Honorable Timothy M. Tymkovich shall preside over the above-captioned case.

**DONE** this 24th day of February, 2020.

FOR THE COURT:

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

SELF-REPRESENTATION
EXHIBIT
2
Robbenhaar / Snyder / Molzen chronology
9/25/2026

# RE: Activity in Case 1:26-cr-02056-MLG USA v. Channon N

From Daniel Snyder <Daniel_Snyder@fd.org>

To matt[redacted]

CC Martin Juarez <Martin_Juarez@fd.org>, Carlos Herrera <Carlos_Herrera@fd.org>

Date Monday, May 4th, 2026 at 5:08 PM

The arraignment will last 5 minutes. You should be out of the courthouse no later than 10:30 I would presume. Unless there is an unexpected delay.

Even if Robbenhaar does sit for the arraignment, it is of little consequence as he will not be making any rulings, minor or substantive. You would be advised of the charges, penalties, enter a not guilty plea, and judge would issue a standard order of discovery and set a pretrial motions deadline. The actual trial order with deadlines is not set by the magistrate judge. Judge Garcia's chambers will typically issue a trial order in the first week after arraignment – and the initial date will be within 70 days of your arraignment to comply with the Speedy Trial Act. We would then motion the court for any continuance or extension of deadlines.

The indictment is still one count and you are correct that 924 is just citing to the penalty provision. You may have to process with the U.S. Marshal's in the dungeon with the new charging document. They sometimes don't require if there is no change in the charge(s).

*Daniel B. Snyder*

Assistant Federal Public Defender

(O) 505.346.2489 (E) daniel_snyder@fd.org

**From:** matt[redacted]<matt[redacted]
**Sent:** Monday, May 4, 2026 3:55 PM
**To:** Daniel Snyder <Daniel_Snyder@fd.org>
**Cc:** Martin Juarez <Martin_Juarez@fd.org>; Carlos Herrera <Carlos_Herrera@fd.org>
**Subject:** RE: Activity in Case 1:26-cr-02056-MLG USA v. Channon Notice of Hearing

You don't often get email from mattchannon@pm.me. Learn why this is important

EXTERNAL SENDER

Dear Mr. Snyder and defense team,

Receipt acknowledged. I will be there at 9:15. I should have no problem making a 12 noon campaigning videoconference to follow, right?

I have also notified Mr. Carter regarding the hearing and GPS schedule and gotten it cleared.

What do you think about filing a recusal motion, since Robbenhaar was my trial counsel for the 966 alleged felony case this case is predicated upon? He's recused himself many times in other cases (appellate and civil both). Would like to avoid a situation where he walks in, realizes who it is, and recuses himself on the spot, causing us to repeat the exercise.

Will there be any opportunity for, or point in, asking for clarifications of conditions at arraignment?

Last time I was arraigned, I had to be "processed" in the dungeon for about an hour. Will that happen again?

What trial date range are you thinking is in my best interest, what the AUSA will want, what the magistrate will want, and where on the calendar is that all likely to land?

The indictment says “in violation of 18 U.S.C. §§ 922(a)(6) and 924.” My understanding is that § 922(a)(6) is the substantive false-statement charge and § 924 supplies the penalty provision. Is that correct, and is this still just one count?

And, as before, no redactions on the redacted indictment. I've never seen a <u>handwritten</u> e-signature before. I'm counting on you to request the CM/ECF filing metadata for this document, as well as documents 1 and 9. Carlos, is that something you can do?

Can you attempt to get just the title of sealed document 14? And perhaps the filing metadata as well? I have reason to believe it's not an original indictment.

This strikes me as a placeholder indictment- one that they reserve the right to supersede at some unknown point in the future. And essentially their workaround against the speedy trial clock. Does that match with your thoughts?

Bunch more thoughts, but I'll save those for Thursday.

Best,
Matt Channon

505-28[redacted]6

On Monday, May 4th, 2026 at 2:35 PM, Daniel Snyder <Daniel_Snyder@fd.org> wrote:

Hi Matt,

The government returned and indictment on Friday and the case was assigned to Judge Matthew Garcia. You have been scheduled for an arraignment this Thursday, May 7th at 9:30am. We will be back in the Rio Grande Courtroom and ironically the judge will be your former trial counsel Judge Robbenhaar. Let's plan to meet outside the courtroom at 9:15. I would recommend sending a note to Mr. Carter regarding the hearing and to add to the GPS schedule. Please respond so I know you are aware of the hearing on Thursday.

***Daniel B. Snyder***

Assistant Federal Public Defender

(O) 505.346.2489 (E) daniel_snyder@fd.org

**From:** cmecfbb@nmd.uscourts.gov <cmecfbb@nmd.uscourts.gov>
**Sent:** Monday, May 4, 2026 8:33 AM
**To:** cmecfto@nmcourt.uscourts.gov
**Subject:** Activity in Case 1:26-cr-02056-MLG USA v. Channon Notice of Hearing

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**United States District Court - District of New Mexico**

**Notice of Electronic Filing**

The following transaction was entered on 5/4/2026 at 8:32 AM MDT and filed on 5/4/2026

**Case Name:** USA v. Channon

**Case Number:** 1:26-cr-02056-MLG

**Filer:**

**Document Number:** 16(No document attached)

**Docket Text:**
**NOTICE OF HEARING as to Matthew James Channon: Arraignment set for 5/7/2026 at 09:30 AM in Albuquerque - 320 Rio Grande Courtroom before Magistrate Judge John F. Robbenhaar. (kd)**
**[THIS IS A TEXT-ONLY ENTRY. THERE ARE NO DOCUMENTS ATTACHED.]**

**1:26-cr-02056-MLG-1 Notice has been electronically mailed to:**

Mindy Pirkovic mindy_pirkovic@nmp.uscourts.gov

Daniel Benjamin Snyder Daniel_Snyder@fd.org, nmabq-ecf@fd.org

Paul Mysliwiec paul.mysliwiec@usdoj.gov, CaseView.ECF@usdoj.gov, Felisha.Landry@usdoj.gov, USANM.ECFCriminalABQ@usdoj.gov, renae.renteria@usdoj.gov, summer.swagerty@usdoj.gov

Anthony Carter anthony_carter@nmp.uscourts.gov

**1:26-cr-02056-MLG-1 Notice has been delivered by fax to:**

**1:26-cr-02056-MLG-1 Notice has been delivered by USPS to:**

# RE: Activity in Case 1:26-cr-02056-MLG USA v. Channon M
# Substitute Attorney

From Daniel Snyder <Daniel_Snyder@fd.org>

To matt[redacted]

Date Monday, May 11th, 2026 at 9:47 AM

Received. I will draft and file a motion to withdraw / appoint new counsel sometime today. I would expect a hearing Thursday or Friday, but possibly next Monday since Molzen is retired and Robbenhaar is on the duty bench for the remainder of this week.


***Daniel B. Snyder***

Assistant Federal Public Defender

(O) 505.346.2489 (E) daniel_snyder@fd.org


**From:** matt[redacted] <matt[redacted]
**Sent:** Monday, May 11, 2026 9:39 AM
**To:** Daniel Snyder <Daniel_Snyder@fd.org>
**Subject:** RE: Activity in Case 1:26-cr-02056-MLG USA v. Channon Motion to Substitute Attorney

EXTERNAL SENDER

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
MAY 1 8 2026
ERIK PALTROW
CLERK

# UNITED STATES DISTRICT COURT
for the

United States of America
v.
Marvin Lee Martinez

*Defendant*

Case No. 26-CR-2062 KWR

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1) The defendant must not violate federal, state, or local law while on release.

(2) The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3) The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4) The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: ______________________
*Place*

To Be Notified

on ______________________
*Date and Time*

If blank, defendant will be notified of next appearance.

(5) The defendant must sign an Appearance Bond, if ordered.

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;
(3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
(4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

[signature]
*Defendant's Signature*

*City and State*

### Directions to the United States Marshal

( ✓ ) The defendant is ORDERED released after processing.
(   ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: ____________

[signature]
*Judicial Officer's Signature*

Karen B. Molzen, U.S. Magistrate Judge
*Printed name and title*

DISTRIBUTION: COURT DEFENDANT PRETRIAL SERVICE U.S. ATTORNEY U.S. MARSHAL

SELF-REPRESENTATION
EXHIBIT 3
Messec / USMS / Central Desert
9/25/2026

**From:** "Sanchez, Gabriel (USMS)" <Gabriel.Sanchez@usdoj.gov>
**To:** "Pelot, Jerrod C." <jpelot@cabq.gov>
**Subject:** Fw: Matt Channon threat
**Date:** Fri, 29 Aug 2025 21:56:44 +0000
**Importance:** Normal

---

**This Message Is From an External Sender**
This message came from outside your organization.

Report Suspicious

Get Outlook for iOS

---

**From:** Kohr, Lael (USANM) <Lael.Kohr@usdoj.gov>
**Sent:** Friday, August 29, 2025 3:10:08 PM
**To:** USMS-NMD-JSU <USMS-NMD-JSU@usms.doj.gov>
**Cc:** Brawley, Kimberly (USANM) <Kimberly.Brawley@usdoj.gov>; Wagner, Glenn (USANM) <Glenn.Wagner@usdoj.gov>
**Subject:** FW: Matt Channon threat

Sorry for the late afternoon before a long weekend report. Please see the below summary from AUSA Paige Messec regarding a concern for her and AUSA Holland Kastrin. There is some VERY concerning information in this summary. Please let me know ASAP what you all feel we should be doing at this time.

**Lael J. Kohr**
*Supervisor, Facility and Support Services*
*District Office Security Manager (DOSM)*
United States Attorney's Office • District of New Mexico
201 3rd Street NW, Ste. 900 • Albuquerque, NM 87102
Desk 505.224.1534 • Mobile 505.350.8189

**-Lael**
Desk 505.224.1534
Mobile 505.350.8189

**From:** Messec, Paige (USANM) <Paige.Messec@usdoj.gov>
**Sent:** Friday, August 29, 2025 2:55 PM
**To:** Kohr, Lael (USANM) <Lael.Kohr@usdoj.gov>
**Subject:** RE: Matt Channon threat

I should add that Holland Kastrin was also involved in the case (in fact, she took it to trial while I was on maternity leave). Brandi did not mention her.

**From:** Messec, Paige (USANM)
**Sent:** Friday, August 29, 2025 2:54 PM
**To:** Kohr, Lael (USANM) <Lael.Kohr@usdoj.gov>
**Subject:** Matt Channon threat

Lael, to follow up on my phone call, I received a call a few minutes ago from Brandi Channon, wife (possibly estranged wife or ex wife) of Matthew Channon. The Channons were defendants in a white-collar case of mine from about ten years ago. They were both convicted of wire fraud; she got probation and he got 12 months custody. The case number is 13-CR-966.

Brandi was very upset and reported that Matt Channon has gone crazy and believes that I am trying to kill him. He believes I am poisoning his drinks (also that she may be doing so). He also may believe that I am trying to frame Brandi for killing him. She said that she believes he is following me, and she thinks that he sent a video to her son today showing a car at nighttime that Matt said was mine. (She described it as a green sedan, which is not a car that I drive.) Matt told Brandi that he knows my license plate number. She mentioned that Matt had been on a 72-hour emergency hold in Amarillo, TX, but was discharged Thursday (I presume yesterday). She thinks he is back in town and said something about him parking his truck at the FBI. His parents are reportedly looking for him. She is scared and has her kid or kids with family members so he can't get to them.

Brandi's cell phone is 505-30[redacted]0. I told her that I would alert the appropriate people at my office and that someone would likely reach out to her.

Paige

Good morning, he is on the list on for tomorrow to discharge. Would you like to come today?

Get Outlook for iOS

---

**From:** Tinney, Matthew A. <mtinney@cabq.gov>
**Sent:** Friday, September 5, 2025 6:26:44 AM
**To:** Kimberly Smith (0739-Dir of SocSvcs-CDBH) <kimberly.smith0739@fundltc.com>
**Subject:** Hoping to see MC

EXTERNAL EMAIL: This email originated from outside of Fundamental's email system. DO NOT click links, open attachments or take action unless you recognize the sender and know the content is safe.

---

Hi Kim,

I got your email from Mike Lucero. I am not sure if you are still with Central Desert, but if you are, I was wondering if there would be a time that works that we could meet with Matthew Channon before he is discharged. We just wanted to connect and see if there is anything he needs help with back in the community. The US Marshals are also hoping to get an update to see if they need to put guards on the official he was threatening.

**-Matt-**

**Sergeant Matthew Tinney**
**Crisis Intervention Unit**

Albuquerque Police Department
*Crisis Intervention Division*
**Office Phone: 505.924.6009**
Cell Phone: 505.553.2229
mtinney@cabq.gov

<image001.jpg>

# Notes
Central Desert Behavioral Hlth



| | | | | |
|---|---|---|---|---|
| Name: Channon, Matthew J | Account #: 90739024285 | M/R #: 23523 | Admit Date: 8/30/2025 | Room: U00200207A |
| Physician: Sutter, Reuben | Age: [redacted]Y | Sex: Male | Weight : 187.0 lbs | Birth Date: [redacted]/1977 |
| Allergies: latex | | Diagnosis: Brief psychotic disorder | | |

## Diagnosis

F23 - Brief psychotic disorder

R45851 - Suicidal ideations

F5105 - Insomnia due to other mental disorder

F411 - Generalized anxiety disorder

R4589 - Other symptoms and signs involving emotional state

R52 - Pain, unspecified

Z299 - Encounter for prophylactic measures, unspecified

Z9181 - History of falling

Z03818 - Encounter for observation for suspected exposure to other biological agents ruled out

Diagnosis: ______________________
Date Diagnosed: __________ Diagnosis Code: ________ SNOMED Problem Code: ______________
Comment: ______________________
Diagnosis: ______________________
Date Diagnosed: __________ Diagnosis Code: ________ SNOMED Problem Code: ______________
Comment: ______________________
Diagnosis: ______________________
Date Diagnosed: __________ Diagnosis Code: ________ SNOMED Problem Code: ______________
Comment: ______________________

## TREATMENT

### Treatment Plan

*Reason for continued hospitalization; medication changes, lab orders, family/ treatment guardian meetings, other.*

Continue current medication regimen. Patient was seen by US Marshall in regards to a stalking charge against him and we therefore are waiting instruction that it is safe for the patient to be discharged to the community without being a threat or danger to others.

### Status

- ( ) Baseline
- ( ) Improving
- ( ) Partial Response
- ( ) Stable
- ( ) Worsening
- (●) No Change

## AFTERCARE/DISCHARGE PLAN

### Aftercare/Discharge Plan

*What are the discharge plans? If returning to a facility, list specific facility name. Any concerns regarding discharge?*

Patient was on the schedule for discharge for 9/6/2025 but according to social services, the discharge will have to be postponed. Patient was seen by US Marshall in regards to a stalking charge against him and we therefore are waiting instruction that it is safe for the patient to be discharged to the community without being a threat or danger to others.

## ESTIMATED LENGTH OF STAY

### Estimated Length of Stay

3 to 5 days

### Assessment Time

Total time spent on patient care: 30 minutes

got from patient, staff and parents. Patient will need to be rehydrated and metabolically improved before he sees behavioral health. I have placed admission and I have discussed patient with internal medicine. Patient has been not been accepted by internal medicine given his recurrent hyponatremia and hyperkalemia. They think patient can be treated in the emergency department and cleared by our staff and then be seen by behavioral health. After a liter of sodium chloride, patient's current sodium is 135. Patient's potassium stated 3.1 after given oral potassium. Will continue to give potassium p.o. Otherwise I have cleared patient for behavioral health. We did inform behavioral health that patient has been medically cleared and ordered for behavioral to see patient. Otherwise, there is been no change in patient's physical exam, vital signs during this time.

It is changed shift. Unfortunately behavioral health will not be able to see the patient untill tomorrow morning. Patient has been calm and cooperative. Will place olanzapine IM in case he gets severely paranoid and wants to flee. Will be turning patient over to oncoming provider who will monitor and treat patient as needed and hopefully patient is seen in abided by behavioral health we will do the final disposition.

Transfer of Care Note - Outgoing Provider

I have transferred care of the patient to Provider Dr. Olson.

Items pending that need to be checked: Pending consult with behavioral health evaluation and re-evaluate patient during this time which may affect the patient's clinical disposition.

Expected disposition of patient at time of transfer of care: Further evaluation needed.

Patient was in unchanged condition at time of transfer.

Problems Addressed:
Change in mental status: undiagnosed new problem with uncertain prognosis
  Details: Se above
Contusion of multiple sites <Initial>: undiagnosed new problem with uncertain prognosis
  Details: See above
Hypokalemia: undiagnosed new problem with uncertain prognosis
  Details: See above
Hyponatremia: undiagnosed new problem with uncertain prognosis
  Details: See above
Minor head injury <Initial>: undiagnosed new problem with uncertain prognosis
  Details: See above
Unspecified multiple injuries, initial encounter: undiagnosed new problem with uncertain prognosis
  Details: See above

Amount and/or Complexity of Data Reviewed
Independent Historian: parent, guardian, caregiver and EMS
  Details: See above
External Data Reviewed: labs, radiology, ECG and notes.
  Details: I have reviewed patient's previous medical records, imaging and lab work to compare today's workup and care.
Labs: ordered.
  Details: See above
Radiology: ordered.
  Details: See above
ECG/medicine tests: ordered.
  Details: See above
Discussion of management or test interpretation with external provider(s

Risk

SELF-REPRESENTATION
EXHIBIT Yarbrough / 966 / LibDib
4
9/25/2026

**U.S. Department of J**
United States Attorney
District of New Mexico

*Post Office Box 607*
*Albuquerque, NM 87103*

*Telephone: 505-346-7274*
*Fax: 505-346-7296*

Hand-delivered

Amy Sirignano, Esq.
20 First Plaza NW, Suite 310
Albuquerque, NM 87102

October 24, 2013

*Re: United States v. Matthew Channon,* 13-CR-966 JCH

Dear Ms. Sirignano,

I write in response to your October 2, 2013 discovery letter.

On the enclosed CD, labeled Discovery 10.24.13, you are being provided with scanned copies or photographs of the documents seized from the Channons' home. Items that cannot be readily scanned (primarily ink cartridges) are available for you to inspect at the FBI. Although Rule 16 does not place the burden of copying documents on the government, we did so in an attempt to simplify matters. For clarification, it was never *my* suggestion that you hire a third party to scan the documents — that was an idea suggested by the defense.

Since your letter, the government has delivered to you the Apple computer and the Hitachi hard drive that did not contain relevant evidence. This leaves only two items of computer evidence taken from the Channon residence in FBI custody: the Mac Mini A1103 of 1B31 and the Mac Mini A1179 of 1B37. To receive images of the two Mac Mini hard drives, Mr. Channon must provide a suitable storage device. I first informed him of this in my initial discovery letter of May 14, 2013. I recognize that this requires court approval, and as a government employee, I am all too familiar myself with the red tape of procurement — but I cannot treat defendants differently depending on whether they are represented by a public defender, CJA counsel, or a privately retained attorney.

I'm not sure what you mean when you say that "the FBI won't certify that its own copies of the computer evidence match the original seized evidence." The government's position is that the images created from the seized computer evidence *do* match the original evidence. The only reason I asked for a stipulation as to the imaged copies is your client is requesting the release of the original evidence before the conclusion of the case. This i

standard procedure, but I was willing to accommodate that request if I could do so without risk to the government's case.

Given the defendant's declination of this option, however, I suggest that we follow the normal procedure for disclosure of computer evidence. Upon receipt of a storage device, the Regional Computer Forensics Laboratory (RCFL) will make an exact copy of the two hard drives and provide them to you. The RCFL does not permit a defense expert access to the facility, but the RCFL will provide you with the logs pertaining to the images. These should allow your computer expert to assess the integrity of the images. If, after receiving the images and the logs, you wish to stipulate to the authenticity of the images, then the government will release the originals. Even if you ultimately find that you are unable to enter such a stipulation and wish to file a motion for the return of the original hard drives, I nevertheless request that you provide the RCFL with a suitable storage device as soon as possible so that you can at least review the logs and the evidence that the government has identified on the hard drives, which is set forth on Bates 0009.

Your letter contains 39 requests for additional production, addressed below. Except where additional production is noted below, the government has already produced everything that is required at this stage of litigation under the Court's discovery order, Rule 16, and other authorities. In some cases, even though I don't believe that what you are requesting is required by the discovery rules, the government will voluntarily provide the additional discovery requested.

The paragraphs numbers below refer to the numbered paragraphs on pages 3 through 7 of your Oct. 2 letter:

- ¶¶ 1, 2, 4, 17, 18, 19, 22, 23, 24, 25, 26, 34, 35, 36, 37, 38, and 39. These paragraphs request materials which, if they exist, are in the possession of private parties. The government is not required to obtain discovery from private parties on behalf of the defendant. Discoverable materials within these categories in the possession of the government have been disclosed.

- ¶2. The images and spreadsheets attached to Bates 1303-08 are being produced as Bates 2533-42. Please ignore the files labeled 1315b-g and 1315h; they are duplicates but could not be deleted from production because of errors with the file name. Regarding Bates 1314, 1315, and 1315a, the image sent by SA Boady was provided as Bates 1301; the images attached by Mr. Gardner were provided as Bates 1299 and 1300. The image for 1331-33 was previously included as the subsequent Bates number, 1334. The images attached to Bates 1413-1415 are being included as Bates 2543 and 2544. The image attached to 1522 is being provided as Bates 2545. I don't believe that 1526 is missing anything. The question-mark box under Steven Gardner's signature line is for the OfficeMax logo, which does not display when converted from email format.

- ¶3. You requested documents to ascertain the meaning of the term "qualified purchase." This is a term used by OfficeMax. *See, e.g.*, Bates 1757-61.

- ¶5. I don't understand what you are requesting.

- ¶6. The omitted pages are being provided. An error related to the length of the files names may have caused their initial omission. I don't see any "numbering issues" with Bates 1104-06. (¶6)

- ¶7. Bates numbers 1339 and 1620 are an Excel spreadsheet and appear legible to me. Please provide further explanation of the problem.

- ¶8. The discoverable portions of these documents have been provided.

- ¶9. Bates 1349 is complete. Part 1 of 4 has been produced as Bates 1347.

- ¶10. All of the attachments you refer to in this paragraph were previously produced adjacent to the files they correspond to. They are being re-labeled for clarity and re-produced.

- ¶11. All discoverable material has been produced.

- ¶¶12, 13, 14, 15, 16, 28. All material currently discoverable has been produced. Jencks Act material will be produced before or at the time required by law.

- ¶ 20. Bates 1328 is not missing its Bates number (it is at the bottom of the Excel sheet), and I don't see any reference there to a report of an interview with Mr. Channon.

- ¶ 21. Free software downloads are available on the internet for viewing IMG files. Please let me know if you are unable to find one that works for you.

- ¶¶ 27, 30. Documents seized from the Channon residence and Gmail search warrants have been disclosed. The government does not intend to use any documents seized from 1132 Calle del Oso in its case in chief against the Channons.

- ¶ 29. There is nothing on the chains of custody that is discoverable at this time.

- ¶¶ 32, 33. The diagram/schematic you requested and other documentation regarding the search of the Channons' residence, including a log corresponding to the photographs taken, are being provided in Bates 3100-3124. I previously emailed to you on July 18, 2013 a spreadsheet listing all items of evidence from the Channon residence and 1132 Calle del Oso.

The plea offer remains open, and I will extend the deadline to December 30, 2013. The offer is contingent on the Defendants not requiring the government to respond to pretrial motions in that time period. Your discovery letter demonstrates a solid command of the evidence in this case, and this extension should allow ample time to assimilate the additional material and evaluate whether the Defendants plan to proceed to trial. If you have any conflicts that would prevent a response by that date, please let me know as soon as possible.

Sincerely yours,

STEVEN C. YARBROUGH
Acting United States Attorney

Paige Messec

C. PAIGE MESSEC
Assistant U.S. Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 224-1501
(505) 246-7296 fax

CC: Todd Hotchkiss

Enclosure:
Compact disc labeled Discovery 10.24.13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

MATTHEW CHANNON,

Plaintiff,

vs. Civ. No. 24-1124 WJ/SCY

LIBERATION DISTRIBUTION, LLC; and
INSPERITY, INC., d/b/a ADMINISTAFF
COMPANIES, INC. GP LTD,

Defendants.

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO COMPEL AND GRANTING MOTION TO EXTEND SCHEDULING ORDER DEADLINES**

This matter comes before the Court on (1) Defendants' Motion To Compel Plaintiff's Disclosures Under D.N.M. LR-Civ. 26.3(d), Doc. 75; and (2) Defendants' Motion To Extend Pending Pretrial Deadlines, Doc. 76. Plaintiff opposes both motions. The Court will grant in part and deny in part the motion to compel, and will grant the motion to extend deadlines.

## I. Background

Defendants argue that Plaintiff has not satisfied his initial disclosure obligations under the Local Rules. Specifically, Defendants move to compel:

> - A list of the name, address and phone number of any healthcare provider, including without limitation, any physicians, dentists, chiropractors, mental health counselors, clinics and hospitals which have treated the party within the last five years preceding the date of the occurrence set forth in the pleadings and continuing through the current date, as required to be included in Plaintiff's initial disclosures under D.N.M. LR-Civ 26.3(d)(1); [and]
>
> - A signed authorization to release medical records form for each healthcare provider identified, substantially identical to the forms set forth in Appendix A, as required to be included in Plaintiff's initial disclosures under D.N.M. LR-Civ 26.3(d)(3) . . . .

Doc. 75 at 1.

## V. Pretrial Deadlines

Defendants move to extend all unexpired pretrial deadlines by 16 weeks, arguing that Plaintiff's refusal to produce the provider list and medical authorizations has prevented Defendants' expert from preparing his report by the current deadline, which was October 24. Doc. 76. Plaintiff opposes the request. Doc. 78.

The Court agrees that because Plaintiff's medical condition is at issue, Defendants should have Plaintiff's signed authorizations and Plaintiff's medical records before they are required to disclose their expert. Therefore, the Court finds good cause to extend the scheduling order deadlines. The Court also finds that the time needed to obtain medical records from providers is unpredictable. At this stage, Defendants still do not have a full list of providers and signed authorizations from Plaintiff. The Court will extend the deadlines by an additional month on top of Defendants' request due to the length of time required to brief the motion and issue this order, and will be receptive to further requests for extension of time if there are delays in obtaining the authorizations and records.

## CONCLUSION

THEREFORE, IT IS ORDERED THAT Defendants' Motion To Compel Plaintiff's Disclosures Under D.N.M. LR-Civ. 26.3(d), Doc. 75, is GRANTED IN PART and DENIED IN PART. Within 7 days of the date of this Order, Plaintiff shall produce:

- a list of the name, address and phone number of any healthcare provider, including without limitation, any physicians, dentists, chiropractors, mental health counselors, clinics and hospitals, which have treated Plaintiff from July 2017 and continuing through the current date, if Plaintiff may use information from that provider in support of his claims; and

- for each healthcare provider listed, a signed authorization to release medical and mental health records form as set forth in Appendix "A," with no modifications or restrictions not already contained in the form.

Failure to follow this order may result in sanctions, to include dismissal of Plaintiff's lawsuit.

IT IS FURTHER ORDERED THAT Defendants' Motion To Extend Pending Pretrial Deadlines, Doc. 76, is GRANTED. The Court sets the following deadlines:

| | |
|---|---|
| Defendants' Rule 26(a)(2) expert disclosure: | March 13, 2026 |
| Termination date for discovery: | April 23, 2026 |
| Motions relating to discovery to be filed by: | May 13, 2026 |
| Pretrial motions other than discovery motions filed by: | June 1, 2026 |

**SO ORDERED.**

**STEVEN C. YARBROUGH**
**UNITED STATES MAGISTRATE JUDGE**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**MATTHEW CHANNON,**

**Plaintiff,**

**vs.** **No. 1:24-cv-01124-WJ-SCY**

**LIBERATION DISTRIBUTION, LLC; and INSPERITY, INC., d/b/a ADMINISTAFF COMPANIES, INC. GP LTD.**

**Defendants.**

## JUDGMENT

**THIS MATTER** is before the Court under Fed. R. Civ. P. 58 on the Memorandum Opinion and Order of Dismissal entered by the Court contemporaneous with this Judgment, and the Court having granted Defendants' Motion for Sanctions and dismissed all claims in this case with prejudice,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Complaint **[Doc. 1], First Amended Complaint [Doc. 18],** and all claims and causes of action that were or could have been brought by Plaintiff against Defendants in this case are **DISMISSED with prejudice.**

/s/______________________________
WILLIAM P. JOHNSON
SENIOR UNITED STATES DISTRICT JUDGE

SELF-REPRESENTATION
EXHIBIT 5
Kelly / outside-counsel record
9/25/2026

Unit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 31, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MATTHEW CHANNON,

Defendant - Appellant.

No. 19-2029
(D.C. No. 1:13-CR-00966-JCH-KK-1)
(D. N.M.)

**ORDER**

Before **BRISCOE**, **KELLY**, and **CARSON**, Circuit Judges.

This matter is before the court on appellant Matthew Channon's pro se *Motion to Recuse*. The court notes that, on March 24, 2020, after Mr. Channon filed his motion, the court granted attorney Katayoun A. Donnelly's *Motion to Withdraw* as Mr. Channon's counsel and appointed the Office of the Federal Public Defender for the Districts of Colorado and Wyoming (the "Colorado FPD") to represent Mr. Channon going forward.

Upon consideration, the court denies Mr. Channon's pro se motion without prejudice to renewal should the Colorado FPD believe the motion is meritorious and can be supported with reasoned legal argument and authorities.

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 19-2029 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW CHANNON, | ) | D.C. No. 1:13-CR-00966-JCH-KK-1 |
| | ) | District of New Mexico |
| Defendant-Appellant. | ) | |

## MOTION FOR RECUSAL

Matthew Channon respectfully moves for the recusal of Judge Kelly from his appeal. The government opposes the requested relief.

This motion is based on an interaction between Mr. Channon and Judge Kelly that occurred following oral argument in this case. Mr. Channon's argument is, in short, that a reasonable observer could view this interaction, and the events that followed, as a display of impartiality. This argument is fully explained below.

## BACKGROUND

The limited facts relevant to this motion are as follows. These facts are principally derived from Mr. Channon's representations to undersigned counsel.[1] On March 12, 2020, Mr. Channon's case was argued in front of a three-judge panel in the

[1] A full history of Mr. Channon's case can be found in the opening brief filed before this Court in Case No. 19-2029.

Tenth Circuit Court of Appeals. The panel consisted of Judge Briscoe, Judge Kelly, and Judge Carson. *See* Case No. 19-2029.

Mr. Channon, who lives in New Mexico, flew to Denver to watch the argument. On his return flight, Mr. Channon was seated next to Judge Kelly. Mr. Channon and Judge Kelly engaged in conversation during the flight. The men talked about the crowding on the plane during boarding, about how both men had attended the same argument earlier in the day, and Mr. Channon mentioned to Judge Kelly that he was the judge who had ruled against him in his previous appeal. [2]

Upon departing the flight, Mr. Channon asked Judge Kelly whether Judge Kelly had ever met anyone whose life he had ruined through one of his opinions. When Judge Kelly responded in the negative, Mr. Channon stated "well now you have." As he was standing to leave, Judge Kelly responded that he had never ruined anybody's life. Mr. Channon, remaining seated, stated "Actually, you have. Good day, sir." Mr. Channon then turned away from Judge Kelly, and the two men eventually departed the airplane going their separate ways. Mr. Channon immediately emailed the attorney representing him at the time about this exchange.[3]

---

[2] Judge Kelly authored the opinion issued in Mr. Channon's first appeal. *United States v. Channon*, 881 F.3d 806 (10th Cir. 2018).

[3] After oral argument, Mr. Channon's attorney successfully moved to withdraw from his case. The Office of the Federal Public Defenders was appointed to represent Mr. Channon for the remainder of his appeal.

One day after the oral argument, Mr. Channon's probation officer called Mr. Channon and ordered him to report in-person that afternoon. Mr. Channon dropped everything, found child-care, and complied with the directive. At the meeting, two probation officers thoroughly questioned Mr. Channon about the conversation that Mr. Channon had with Judge Kelly. Toward the end of the meeting, one of the probation officers stated that Mr. Channon's account matched the information that they had. Neither Mr. Channon, nor Mr. Channon's then-attorney, had reported the incident to anyone. Mr. Channon's probation officer informed him that he was not in violation of his supervised release conditions but warned that any further conversations with any judge would constitute a violation and threatened that Mr. Channon might have to undergo a mental health evaluation if he engaged in any further ex-parte communications with judges.

Accordingly, Mr. Channon filed a pro se motion seeking to recuse Judge Kelly from his case. On March 31, 2020, this Court dismissed Mr. Channon's motion without prejudice. This Court instructed that counsel—who had been recently appointed—could renew Mr. Channon's motion at his discretion.

## ARGUMENT

Under 28 U.S.C. § 455(a) "any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Importantly, the test is purely objective. *United States v. Gipson*, 835 F.2d 1323, 1324 (10th Cir. 1988). What is *not* at issue is "the judge's actual state of mind,

purity of heart, incorruptibility, or lack of partiality." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). The test only looks to "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992). Guiding this Court's analysis is its duty to "protect the very *appearance* of impartiality." *Gipson*, 835 F.2d at 1325.

Mr. Channon satisfies this objective standard. The initial test in this Court's analysis is whether "a reasonable *factual* basis exists for calling the judge's impartiality into question." *Cooley*, 1 F.3d at 993. Here, the reasonable factual basis is grounded in the conversation Mr. Channon had with the two probation officers. The probation officers were aware of Mr. Channon's conversation with Judge Kelly without Mr. Channon—or his attorney—having informed probation of the incident. By process of elimination, a reasonable person could infer that Judge Kelly reported the conversation he had with Mr. Channon to law enforcement as Judge Kelly was the only other person to know of the conversation. *See id.* ("The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom.").

Based on this inference a "reasonable person . . . would harbor doubts about the judge's impartiality." *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir.1992). As Judge Kelly's actual motivations are not at play, the only question is whether a reasonable observer could view the reporting of the conversation as an "outward manifestation" of impartiality. *Cooley*, 1 F.3d at 993. Such a view would be reasonable. A reasonable person could view the reporting of the conversation as an attempt to get

Mr. Channon in trouble with his probation officer. As a corollary, a reasonable person could question the judge's impartiality.

As noted, the actual motivations for reporting the incident are immaterial. Recusal is warranted when "the totality of the circumstances" create the mere "appearance" that a judge may be impartial. *United States v. Greenspan*, 26 F.3d 1001, 1006 (10th Cir. 1994). "There are few characteristics of a judiciary more cherished and indispensable to justice than the characteristic of impartiality." *Id.* at 1007. The purpose of recusal is "to promote public confidence in the integrity of the judicial process." *Liljeberg v. Health Servs. Corp.*, 486 U.S. 847, 859-60 (1988).

Here, recusal will serve to protect these "hallowed" principles. *Greenspan*, 26 F.3d at 1007. A reasonable person could doubt the impartiality of the system when a judge reports the behavior of a defendant to a law enforcement agency. In such a case, there is a basis for the belief that the judge harbors a bias against the defendant or that the judge's ability to remain impartial has been cast into doubt. Whether such bias actually exists is beside the point. All that matters is that there is an appearance of potential bias. Such an appearance exists here. Accordingly, recusal is warranted.

## CONCLUSION

For these reasons, Mr. Channon respectfully requests that Judge Kelly recuse from further participation in Mr. Channon's appeal.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

*<u>/s/ Grant R. Smith</u>*
GRANT R. SMITH
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Phone: (303) 294-7002
Email Address: Grant_Smith@fd.org

## CERTIFICATIONS

I certify that the following is true and correct to the best of my knowledge and belief, formed after a reasonable inquiry:

(1) This motion is proportionally spaced and contains 1130 words and therefore complies with the applicable type-volume limitations.

(2) Any required privacy redactions have been made.

(3) If required to file additional hard copies, the ECF submission is, except for any redactions, an exact copy of those hard copies.

(4) The ECF submission was scanned for viruses with the most recent version of a commercial virus-scanning program Symantec AntiVirus Corporate Edition, which is continuously updated, and, according to the program is free of viruses.

(5) On April 15, 2020, I electronically filed the foregoing using the CM/ECF system, which will send notification of this filing to opposing counsel: Paige Messec, AUSA, Email: paige.messec@usdoj.gov.

(6) I sent a copy of the foregoing, via email, to Matthew Channon.

*/s/ Grant R. Smith*
GRANT R. SMITH
Assistant Federal Public Defender

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

No. 19-2029

vs.

MATTHEW CHANNON,

Defendant-Appellant.

**RESPONSE TO MATTHEW CHANNON'S MOTION FOR RECUSAL**

The United States respectfully submits this response in opposition to Defendant-Appellant Matthew Channon's motion to recuse Judge Kelly from this appeal. The Court denied an initial motion filed pro se by Channon but allowed Channon's newly appointed counsel to refile the motion should he see fit. Through counsel Channon has now refiled an amended motion.

## I. Background

According to the affidavit that Channon submitted with his pro se motion, he and Judge Kelly were on the same flight from Denver to Albuquerque on March 12, 2020, the day his appeal in this matter was argued in Denver. Channon chose a middle seat next to Judge Kelly. He claims not to have recognized Judge Kelly until there was "no option to find another seat" — and yet, upon finding himself in this supposedly undesired situation, Channon chose

to strike up a conversation. Instead of informing Judge Kelly that he was Matthew Channon, a party to a pending appeal, Channon alluded to having been in Courtroom II earlier that morning and mentioned that Judge Kelly had ruled against him in the past (a statement that could apply to many an attorney). They then engaged in small talk. After an uneventful flight, Channon reengaged Judge Kelly in conversation, asking him if he had ever met someone whose life he had ruined by one of his opinions. Judge Kelly answered no. Channon countered "Now you have," to which Judge Kelly denied having ever ruined someone's life. Channon then insisted that Judge Kelly had, in fact, ruined someone's life, before bidding him a "Good day, sir."

According to the renewed motion that Channon filed through counsel, Channon's probation officer called him the next day and ordered him into the office, where he was questioned about his interaction with Judge Kelly. Channon surmises that Judge Kelly reported the incident to the United States Probation Office. Government counsel has learned that in reality, Judge Kelly notified the U.S. Marshals Service about the incident. Judge Kelly thought but was not certain that the man involved was Matthew Channon; he did not request that the Marshals take or initiate any action against Channon. A deputy U.S. Marshal, after verifying that the man on the plane was in fact Channon, independently determined that Channon's probation officer should be made aware of the inappropriate contact.

## II. Argument

Channon's motion relies upon 28 U.S.C. § 455(a), which instructs that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This requirement is intended "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1310 (10th Cir. 2015) (*quoting Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988)). Section 455 establishes "an objective standard: disqualification is appropriate only where the reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Id.* (quoting *In re McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004)). "In conducting this review," a court asks "how these facts would appear to a well-informed, thoughtful and objective observer," who is "an average member of the public," not a "hypersensitive, cynical, and suspicious person." *Mathis*, 787 F.3d at 1310 (quoting *Sensley v. Albritton*, 385 F.3d 591, 599 (5th Cir. 2004)).

"[A] judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require," *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995), and the statute "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice," *id.*

(quotation marks and citation omitted). A judge should not recuse himself on unsupported, irrational or highly tenuous speculation. *See Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987).

Turning to Channon's allegations, it cannot be said that his motion is lacking in chutzpah.[1] Where it falls short is legal merit. To begin, Channon has his facts wrong. He assumes that Judge Kelly reported the incident to the United States Probation Office, which he says could be viewed "as an attempt to get Mr. Channon in trouble with his probation officer." Motion at 4-5. Instead, Judge Kelly made a report of uninvited contact from a convicted felon and current litigant to the U.S. Marshals Service, the agency responsible for the security of federal judges — and an agency which cannot "get Mr. Channon in trouble" unless Channon has committed a federal crime, which Judge Kelly did not allege and which is not suggested by the facts.

Further, Section 455(a) is not designed to allow a litigant to manufacture the appearance of bias such as by purposefully engaging a judge in conversation and then insulting him. The provision "is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Cooley*, 1 F.3d at 993 (10th Cir. 1993). Threat cases, although involving more serious conduct than that at issue here, are nevertheless a helpful analogy. It is

---

[1] "Chutzpa is that quality enshrined in a man, who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan." Leo Rosten, The New Joys of Yiddish 81 (2010).

well settled that "threats or other attempts to intimidate the judge" will not normally create a duty to recuse, *United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993) — even though a judge in such a situation would be expected to alert the U.S. Marshals to the threat. In *United States v. Greenspan*, 26 F.3d 1001, 1006 (10th Cir. 1994), the Court made it clear that litigants must be discouraged from acting badly in the hopes of obtaining a recusal. *Id.* at 1007. When a threat "is communicated directly to the judge by a defendant, it may normally be presumed that one of the defendant's motivations is to obtain a recusal, particularly if he thereafter affirmatively seeks a recusal." *Id.* at 1006. That situation does not call for recusal. *Id.*

Here, Channon purposefully engaged in conversation with Judge Kelly not once but twice. Following an opportunity to reflect after the first, innocuous exchange, Channon chose to reinitiate the conversation with a question designed to set up his imagined zinger. Channon then "affirmatively [sought] a recusal" of the judge that he believes has ruined his life. No reasonable observer acquainted with these circumstances would believe that Judge Kelly's reporting of the incident to the agency responsible for judicial security betrays any degree of impartiality. The Court should deny Channon's recusal motion.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*s\ C. Paige Messec*
C. PAIGE MESSEC
Assistant U.S. Attorney
P. O. Box 607
Albuquerque, NM 87103
(505) 346-7274
paige.messec@usdoj.gov

## CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION

I HEREBY CERTIFY that the foregoing response was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on April 29, 2020. I ALSO CERTIFY that Grant R. Smith, attorney for defendant/appellant Matthew Channon, is a registered CM/ECF user, and that service will be accomplished by the appellate CM/ECF system. I ALSO CERTIFY that any required privacy redactions have been made. I ALSO CERTIFY that this document contains 1,120 words and that I relied on my word processor, Microsoft Word 2016, to obtain this count. I FURTHER CERTIFY that the digital submission of this document has been scanned for viruses with scanning program McAfee Agent, version number 5.6.1.308, most recently updated on 4/29/2020, and, according to the program, the file is free of viruses.

*s\ C. Paige Messec*
C. PAIGE MESSEC
Assistant United States Attorney

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 13, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MATTHEW CHANNON,

Defendant - Appellant.

No. 19-2029
(D.C. No. 1:13-CR-00966-JCH-KK-1)
(D. N.M.)

---

**ORDER**

---

Before **BRISCOE**, **KELLY**, and **CARSON**, Circuit Judges.

---

This matter is before the Court on Appellant's Motion for Recusal. Upon consideration, the motion is denied.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

SELF-REPRESENTATION
EXHIBIT
6
Khalsa / Robert /
CJA administration
9/25/2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

IN THE MATTER OF:

**APPOINTMENT OF CHAIRPERSONS**
**TO THE CJA PANEL COMMITTEE**

**19-MC-00004-44**

## ADMINISTRATIVE ORDER

Pursuant to Section 5 (b) of the CJA Plan for the District of New Mexico, the CJA Panel Committee will be appointed by the Court, and further in accordance with the policy adopted by the Article III judges in the District in January of 2013, the Chief U.S. District Judge or his/her designee may be appointed to the Criminal Justice Act (CJA) Panel Committee.

**IT IS ORDERED that U.S. Magistrate Judge Kirtan Khalsa and Marc Robert, CJA Resource Counsel, will jointly preside as Chairpersons of the CJA Panel Committee for the United States District Court for the District of New Mexico, effective January 1, 2020.**

DONE this 12th day of December, 2019.

FOR THE COURT:

____________________________________

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE

ElectronicBudgetingAp

# Welcome

The Electronic Budgeting Application (EBA) is a tool for CJA Panel attorneys to create and track budgets to procure funding and resources on criminal cases. Budgets generated in this tool can be uploaded to eVoucher or filed on CM-ECF, depending on the Court's practice.

If you need assistance with the budgeting process, please contact your Circuit Case Budgeting Attorney:

First Circuit
Nell Brown

Second Circuit
Alan Nelson

Third Circuit
Renee Edelman

Fourth Circuit
Emily Munn

Fifth Circuit
Margaret Alverson

Sixth Circuit
Dennis Alerding

Seventh Circuit
Jodi Garvey

Eighth Circuit
Mark Thomason

Ninth Circuit
Suzanne Morris
Jennifer Naegele

Tenth Circuit
Marc Robert

# Notice to Users

This is a restricted government system for official judiciary business only. All activities on this system for any purpose, and all access attempts, may be recorded and monitored or reviewed by persons authorized by the federal judiciary for improper use, protection of system security, performance of maintenance, and appropriate management by the judiciary of its systems. By using this system or any connected system, users expressly consent to

MATT CHANNON
7100 GLADDEN AV NE
ALBUQUERQUE NM 87110




Retail

UNITED STATES POSTAL SERVICE

88001

RDC 01

1 Lb 3.80 Oz

U.S. POSTAGE PAID
USPS Ground Advtg
ALBUQUERQUE, NM 87112
SEP 25, 2026

$8.50

S2323Y501210-16

DISTRICT COURT CLERK
100 N. CHURCH ST. STE
LAS CRUCES, NM 880

RECEIVED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

SEP 2 8 2026

ERIK PA...
CLERK OF COURT

USPS TRACKING® #

9534 6106 0627 6268 2550 09