FILED
United States District Court
Albuquerque, New Mexico
Erik Paltrow
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**
**Plaintiff,**
**v.** **No. CR 26-2056 MLG**

**MATTHEW JAMES CHANNON,**
**Defendant.**

**ORDER DENYING MOTION TO WITHDRAW AND MOTION TO APPOINT SUBSTITUTE COUNSEL, AND PERMITTING DEFENDANT TO REPRESENT HIMSELF**

THIS MATTER comes before the Court[1] on Defendant Matthew James Channon's motion to permit current counsel to withdraw and to appoint substitute counsel. Doc. 54. Also before the Court is Defendant's Motion Seeking Self-Representation (In the Alternative to Appointment of Substitute Counsel). Doc. 58. Having reviewed the motion and the record, and having considered the arguments of counsel and the testimony of Mr. Channon, the Court denies the motion to withdraw and declines to appoint new counsel. The Court, however, will allow Mr. Channon to represent himself and will appoint Mr. Pines as standby counsel.

I. *Motion to Withdraw and to Appoint Substitute Counsel*

Mr. Channon's attorney, Maxwell Pines, moved to withdraw based "on the breakdown in the working attorney-client relationship." Doc. 54 at 2. Mr. Pines explained that "[r]ecent events have materially impaired the trust and communication needed to prepare and present the

---

[1] In his motion seeking self-representation, Mr. Channon suggested that I should recuse myself from acting in this matter under 28 U.S.C. § 455(a) or § 455(b)(3). Doc. 58 at 5–6. I have examined the basis for Mr. Channon's concerns and find that I need not disqualify myself. Mr. Channon was indicted in Case No. 13-cr-966 on March 27, 2013, while I was employed at the U.S. Attorney's Office (USAO) as the Appellate Chief. I left the USAO on August 31, 2015, and became a Magistrate Judge on September 1, 2015. Mr. Channon's case still was in pretrial proceedings when I left the USAO. During my time at the USAO, I had no involvement in Mr. Channon's case, nor did I have supervisory authority over any person involved in the case.

defense," including Mr. Channon's sending emails to the Court (with copies to Mr. Pines and the AUSA), that disclosed excerpts of communications Mr. Channon had with Mr. Pines along with defense strategies and filings that Mr. Channon was attempting to file despite being represented by Mr. Pines. *See id.* The United States opposed the motion, primarily because it viewed Mr. Channon as having "substantially and unreasonably" caused the breakdown in the attorney-client relationship. Doc. 57 at 3. The United States also maintained its position that Mr. Channon is not competent to stand trial. *Id.* At the hearing, the Court did not discern any evidence that Mr. Channon is not competent to stand trial, but it finds that Mr. Channon cannot work cooperatively with any counsel, and that he is responsible for any breakdown in the attorney-client relationship. The Court therefore declines to allow Mr. Pines to withdraw and declines to appoint substitute counsel.

In considering whether to permit withdrawal and appoint substitute counsel, the Court considers (1) whether the request is timely, (2) the defendant's reasons for requesting substitute counsel, (3) whether the conflict between the attorney and the client is so great that it led to a total lack of communications precluding an adequate defense, and (4) whether the defendant substantially and unreasonably contributed to the breakdown in communications. *Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir. 2000).

Here, although the United States does not believe the request is untimely, Doc. 57 at 3, the Court finds that this factor weighs slightly against the defendant. Mr. Pines is Mr. Channon's third appointed attorney. Each time the Court appoints new counsel, the case has moved further along, new counsel needs more time to catch up, and the possibility of further delay increases. The trial in this case is set for November 16, 2026. Doc. 50. The appointment of new counsel likely would delay the start of that trial.

With regard to the second factor, Mr. Channon stated that he had lost confidence in Mr. Pines. Mr. Pines asserted that this loss of confidence stemmed primarily from his lack of experience in federal court although he has handled more than 80 trials in state court. Mr. Pines stated that this was part of the reason he had moved the Court for a second attorney to be appointed, and why he had asked specifically for one that had more federal court experience. This factor weighs against the appointment of new counsel. Mr. Pines' filings in this Court have been thoroughly researched and well-reasoned. He has been appointed to the CJA panel and therefore has been determined competent to represent defendants in federal court. The charged offense is not complicated. Mr. Channon's loss of confidence in Mr. Pines is not objectively reasonable, and this factor weighs against Mr. Channon.

In his motion seeking self-representation, Mr. Channon further complains that his current counsel has refused or failed to raise various recusal and/or conflict issues. Doc. 58 at 8. He also complains that current counsel

> Has similarly not investigated the documented USMS/prosecutorial coordination chain from the period preceding the present arrest—including the AUSA Messec-initiated USMS contact referencing 966 [Dist. Ct. Case No. 13-cr-966], the APD-to-USMS coordination emails, and the Central Desert Behavioral Health records showing that Defendant's psychiatric discharge was conditioned on USMS clearance and that prophylactic intramuscular olanzapine was ordered to prevent flight.

*Id.* In his emails to the Court, Mr. Channon discussed more reasons for his dissatisfaction with Mr. Pines. He complained that Mr. Pines had said that he had looked at "all the sandwiches" (video clips) when he in fact had not looked at the last one. Doc. 55 at 2. Mr. Channon also was concerned that important motions he wanted to file might never reach a judge, although Mr. Pines explained that he was concerned that the motions were not meritorious, and that a judge might punish an attorney for filing unmeritorious motions. *Id.* Mr. Channon also did not understand why his motion for second chair counsel was decided by a magistrate judge instead

of Judge Garcia. Doc. 55 at 3. He also complained that he had not received copies of every document that Mr. Pines filed, and that Mr. Pines had filed a motion asking that the motion seeking modification of his conditions of release be referred to a magistrate judge without his consent. *Id.*

These additional reasons do not warrant the appointment of substitute counsel. Some complaints are entirely outside Mr. Pines' control (for example, the referral of motions to magistrate judges). Some issues appear to stem from Mr. Channon's unrealistic expectations about what his attorney can accomplish within limited time, and others are simply disagreements about strategy which do not warrant the appointment of substitute counsel. The Supreme Court has recognized that "when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas." *Faretta v. California*, 422 U.S. 806, 820 (1975); *see also United States v. Armstrong*, 183 F. App'x 711, 714 (10th Cir. 2006) ("evident disagreements between [defendant] and his appointed counsel were not sufficient to necessitate the appointment of new counsel"). The Court cannot discern any shortcomings in Mr. Pines' representation of Mr. Channon, and Mr. Channon's reasons for requesting substitute counsel are not reasonable.

The third *Romero* factor addresses whether the conflict between the attorney and the client is so great that it led to a total lack of communications precluding an adequate defense. Here, again, Mr. Channon has failed to show a complete breakdown in communication between him and Mr. Pines. Mr. Pines continued to zealously represent Mr. Channon after he sought to withdraw, and after Mr. Channon filed his motion for self-representation. *See* Docs. 63, 64. Mr. Pines filed a motion to dismiss the indictment, acknowledging that it was foreclosed by Tenth

Circuit precedent but noting that the motion was filed to preserve the issue for further review, Doc. 64 at 1, presumably doing so at Mr. Channon's request. During the hearing, Mr. Channon and Mr. Pines conferred with each other several times, and Mr. Pines several times provided the Court with information that Mr. Channon had relayed to him. On this record, the Court cannot find a complete breakdown in communication between Mr. Channon and Mr. Pines.

The final *Romero* factor is whether the defendant substantially and unreasonably contributed to the breakdown in communications. This factor weighs heavily against Mr. Channon. Mr. Pines is Mr. Channon's third appointed attorney. One month after his first counsel was appointed (a member of the Federal Defender's Office), Mr. Channon asserted that his relationship with his current counsel had broken down to such a degree that he had "lost confidence in the representation being provided," and that "[e]ffective communication and [the] collaboration necessary for adequate representation is no longer possible." Doc. 22 at 1. At the time, Mr. Channon characterized this breakdown as a basic mistrust of the Federal Defender's Office because he had been represented by that office in his earlier case, Case No. 13-cr-966.

The Court appointed new counsel on May 21, 2026, Doc. 46, and on August 3, 2026, that attorney sought to withdraw based on a breakdown in communications, exemplified by "Mr. Channon's letter [to the Court, Doc. 39] discussing case strategy and other matters . . . filed on the docket contrary to the advice of counsel." Doc. 40 at 1. The Court granted that motion on August 20, 2026, but warned Mr. Channon that he was required to work cooperatively with his newly appointed counsel, and that it was relatively likely that new counsel would give him the same or similar advice regarding his case as prior counsel. The Court also warned that future requests for new counsel would be viewed with skepticism, as it was starting to look like Mr. Channon was the problem, not his attorneys. *See* Doc. 44.

The Court appointed Mr. Pines on August 21, 2026, and less than six weeks later, Mr. Pines sought to withdraw. Doc. 54. Mr. Pines explained

> that Mr. Channon has sent the Court and the United States what he describes as excerpts of confidential attorney-client communications, together with allegations concerning counsel's representation. He has also communicated directly with the Court and the United States concerning proposed filings and defense strategy. Counsel has substantial concern that the resulting dispute about counsel's own conduct prevents effective continued representation.

Doc. 54 at 2. This conduct is remarkably similar to the conduct that led Mr. Channon's previous counsel to seek withdrawal in May. Further, Mr. Channon acknowledged at the hearing that he began recording his conversations with Mr. Pines almost as soon as Mr. Pines started representing him.

Mr. Channon's attempts to circumvent his own lawyer and communicate directly with the Court when his lawyer advised him not to indicates that he is not working cooperatively with his counsel. Recording his conversations with his lawyer further demonstrates that Mr. Channon has unreasonably and substantially contributed to the deterioration of the attorney-client relationship. It has become obvious to the Court that Mr. Channon is hellbent on presenting his defense in a particular way, and that he is unwilling to waver from pursuing this defense, even if counsel advises him that the defense may lack merit or otherwise is unwise. The Court is convinced that appointing substitute counsel will lead to the same result—yet another attorney seeking to withdraw. The Court therefore declines to permit Mr. Pines to withdraw and declines to appoint substitute counsel.

II. *Motion for Self-Representation*

Mr. Channon has made clear that if the Court declines to appoint yet another attorney, he wants to represent himself. *See* Doc. 58. Just as a criminal defendant has a constitutional right to the assistance of counsel, a criminal defendant also has a constitutional right to conduct his or

her own defense. *Faretta*, 422 U.S. at 836. To do so, however, the defendant must knowingly and voluntarily waive his or her right to counsel, and also must be made aware of the dangers and disadvantages of representing oneself. *Id.* at 835. Toward that end, the Court questioned Mr. Channon under oath regarding his knowledge of his case, the ramifications if he is found guilty, his knowledge of the law, and his education level. Based on Mr. Channon's testimony, the Court makes the following findings.

Mr. Channon has not formally studied law although he has taken the LSAT and has become familiar with legal texts and proceedings. He is well-educated and articulate. He has a master's degree in engineering and is applying to a Ph.D. program at New Mexico Tech. He has not represented himself in a criminal case, but he has represented himself in several civil cases and habeas proceedings, both at the trial court level and the appellate level. He understands that he is charged in a single-count indictment charging him with a violation of 18 U.S.C. §§ 922(a)(6) and 924, which is making a false statement during the purchase of a firearm. He understands the potential penalties that are associated with this crime if he is convicted. He also understands that the Sentencing Guidelines will apply if he is convicted, and he is familiar with those Guidelines. He also understands that the sentencing Judge could impose a sentence that is lower or higher that what the Guidelines recommend. He is familiar with the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, and this District's local criminal rules. He understands that he must abide by all of these rules, and that they will not be relaxed for his benefit. He understands that neither this Court nor the presiding Judge may advise him how to try his case; he knows that he is on his own if he decides to represent himself. The Court advised Mr. Channon that in its view, a trained lawyer would defend him far better than he could defend himself, and that it was unwise for him to try to represent himself. Mr. Channon understands that

a lawyer knows how to select a jury, present a case to a jury, and how to protect his rights. Knowing all this, Mr. Channon still stated that he wanted to represent himself, and that his decision was voluntary.

Because the United States has raised the issue of Mr. Channon's competency, the Court considered whether Mr. Channon appeared competent to represent himself. To find a defendant not competent, the Court must find, by a preponderance of the evidence, "that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d). Based on the evidence before the Court and the Court's own observations, the Court finds that Mr. Channon appears competent to represent himself.[2]

The Court has observed Mr. Channon and spoken with him on at least three occasions: on May 20, 2026; August 20, 2026, and on October 16, 2026. On each occasion, Mr. Channon appeared to understand what was happening, the nature of the proceedings against him, and the roles of each person in the courtroom. He answered all the Court's questions calmly and appropriately. He did not speak out of turn, nor did he engage in obstructive behavior. Nothing about Mr. Channon's behavior or words suggested that he currently is suffering from a mental disease or defect rendering him mentally incompetent within the meaning of 18 U.S.C. § 4241.

The medical records before the Court are limited, but they also do not suggest that Mr. Channon currently is not competent to represent himself. According to a medical record attached to Mr. Channon's motion for self-representation, he was admitted to Central Desert Behavioral

[2] The Court is not deciding whether Mr. Channon is competent to proceed to trial; the Court is making findings based on the evidence before it only in conjunction with Mr. Channon's request to represent himself.

Health at the end of August 2025 and was diagnosed with "Brief psychotic disorder" with some suicidal ideations, insomnia, generalized anxiety, "other symptoms and signs involving emotional state," unspecified pain, "Encounter for prophylactic measures, unspecified," and a history of falling. Doc. 58 at 26. The record also notes "[e]ncounter for observation for suspected exposure to other biological agents ruled out." *Id.* He appears to have been discharged from Central Desert Behavioral Health within a number of days, and the Court is not aware of any additional voluntary or involuntary admissions to any behavioral health facility since then.

The only other medical record before the Court is the Counseling World assessment that was conducted on May 8, 2026. Doc. 55-1. That document indicates that Mr. Channon's mental status on that date was normal. Mr. Channon reported that he previously had been at a facility for "an 11-day evaluation by a psychiatrist." Doc. 55-1 at 1. Although the psychiatrist prescribed him some medication, at a later visit, the psychiatrist informed him that the medication was not necessary. *Id.* Mr. Channon reported that he no longer was seeing a psychiatrist. *Id.* at 2. Counseling World diagnosed Mr. Channon with depression, but there is no evidence in Counseling World's assessment that Mr. Channon currently is suffering from a mental disease or defect that impairs his ability to represent himself. *See id.* Importantly, Counseling World was not assessing Mr. Channon's competence under 18 U.S.C. § 4241(d), but it is the only other medical evidence currently before the Court.

In short, the Court finds that Mr. Channon currently is competent to represent himself, and that he knowingly and voluntarily waived his right to the assistance of counsel after being advised of the dangers and disadvantages of representing himself. I therefore will permit him to represent himself. I also will permit Mr. Channon to file and receive notifications through CM/ECF. Mr. Channon must register for a CM/ECF electronic filing account through the Clerk's

office. The presiding Judge may revoke this permission should Mr. Channon abuse this privilege.

Finally, the Court orders Mr. Pines to remain on this case as standby counsel.

**THE PARTIES ARE NOTIFIED that pursuant to Federal Rule of Criminal Procedure 59(a), a district judge may refer to a magistrate judge any matter that does not dispose of a charge or defense. A party may serve and file objections to the magistrate judge's written order within 14 days after being served with a copy of the written order. FED. R. CRIM. P. 59(a). The party's objections must be both timely and specific to preserve an issue for review by the district court or appellate court. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). If objections are timely filed, the district judge must consider the objections but will only set aside those parts of the magistrate judge's order which are "clearly erroneous" or "contrary to law." FED. R. CRIM. P. 59(a). If objections are not timely filed, the firm waiver rule applies. *Id.* ("Failure to object in accordance with this rule waives a party's right to review."); *see also Sinclair Wyoming Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 781–83 (10th Cir. 2021) ("the firm waiver rule applies when a party fails to object to a magistrate judge's non-dispositive ruling under Rule 72(a)").**

LAURA FASHING
UNITED STATES MAGISTRATE JUDGE