IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
OCT 16 2026
ERIK PALTROW
CLERK

UNITED STATES OF AMERICA,

Plaintiff,

v. No. 1:26-CR-02056-MLG

MATTHEW JAMES CHANNON,

Defendant.

**DEFENDANT'S MOTION TO DISMISS FOR VINDICTIVE PROSECUTION OR, IN THE ALTERNATIVE, FOR A LIMITED EVIDENTIARY SHOWING ON THE CHARGING DECISION (RULE 12(b)(3)(A)(iv)); FOR CONFIRMATION OF THE GRAND-JURY RETURN (RULES 6(e)(3)(E)(ii) AND 6(f))**

Defendant Matthew James Channon, proceeding without counsel, moves under Federal Rules of Criminal Procedure 12(b)(3)(A)(iv)–(v), 6(e)(3)(E)(ii), and 6(f), and the Due Process Clause of the Fifth Amendment, to dismiss the indictment on the ground of vindictive prosecution. Because the facts that would decide the motion, namely who made the charging decision and what those persons were told, are known only to the United States, Defendant asks in the alternative that the Court require the United States to answer specific questions before it rules. He also asks the Court to confirm one fact about the grand-jury return from its own records.

**POSITION OF THE UNITED STATES AND HEARING (LR-Cr 47.1, 47.10)**

Defendant has not ascertained the United States' position on this motion. He is filing in person at the courthouse after the October 16, 2026 representation hearing, where security restrictions prevent access to his cellphone and email within the secured area, and the pretrial-motions deadline falls on the next court day, October 19, 2026.

Obtaining the government's position before filing is therefore impracticable. Defendant treats the motion as opposed without representing that the United States has actually objected; the United States may state its position in its response under LR-Cr 47.8(a). Defendant requests an evidentiary hearing on the motion to dismiss if the declaration and production requested in Part V show that a person identified in Part II participated in, recommended, or materially influenced the charging decision. See LR-Cr 47.10.

## I. SCOPE

1. This motion does not invoke the presumption of vindictiveness recognized in *United States v. Goodwin*, 457 U.S. 368 (1982), does not present for decision any claim concerning document fabrication or alteration, and does not seek disqualification of any attorney. Questions about the chronology of ATF Report of Investigation 000140 and the correction notations on the docket for the complaint, the arrest-warrant return, and the release order are the subject of a discovery motion Defendant will file on or before October 19, 2026; they appear here only as dates.

## II. THE DOCUMENTED RECORD

2. Count 1 identifies a conviction in *United States v. Channon*, No. 1:13-cr-00966 (D.N.M.), as its predicate. See Doc. 57 at 2. The Assistant United States Attorney who prosecuted that case, C. Paige Messec, describes it as "a white-collar case of mine from about ten years ago." Doc. 58 at 24.

3. Defendant later challenged that conviction in *Channon v. United States*, No. 1:19-cv-00200 (D.N.M.), in which the Chief Judge ordered all judicial officers of this District recused on February 24, 2020. Doc. 58 at 2–3 & Ex. 1. In the direct appeal, No. 19-2029, Defendant moved in March 2020 to recuse a Tenth Circuit judge; the motion was

renewed through counsel on April 15, 2020 and denied on May 13, 2020. Doc. 58 at 36–43, 50. Ms. Messec signed the United States' opposition on April 29, 2020. Id. at 44–49. It described Defendant as "a convicted felon and current litigant," stated that the judge had reported the encounter to the Marshals Service and that a deputy marshal "independently determined" that Defendant's probation officer should be told, and called "[t]hreat cases" "a helpful analogy," while acknowledging they involve "more serious conduct than that at issue here." Id. at 45, 47–48.

4. On August 29, 2025, at 2:54 p.m., Ms. Messec emailed Lael Kohr, the District Office Security Manager of the United States Attorney's Office, under the subject line "Matt Channon threat." Doc. 58 at 23–24. The body of the email reports a telephone call from Brandi Channon and states that Ms. Channon said Defendant "believes I am poisoning his drinks," "believes he is following me," and "knows my license plate number." The email does not quote any statement by Defendant threatening harm to anyone. At 2:55 p.m. Ms. Messec added that AUSA Holland Kastrin "was also involved in the case" and that "Brandi did not mention her." Id. at 23. Neither email attributes to Ms. Channon any statement about Ms. Kastrin.

5. At 3:10 p.m. Ms. Kohr forwarded the summary to the U.S. Marshals Service Joint Security Unit, copying two other Office personnel, describing "a concern for her and AUSA Holland Kastrin" and "some VERY concerning information in this summary." Doc. 58 at 23. A Deputy Marshal forwarded the chain to a City of Albuquerque official the same day (header time 21:56:44 +0000). Id. Within fifteen minutes of Ms. Messec's addition, Ms. Kohr's referral expressly identified both prosecutors as persons of concern, carrying forward the inclusion of Ms. Kastrin despite the absence of any allegation about her attributed to the original caller. The cited correspondence shows no

contemporaneous verification of the reported allegations with Defendant, or through a local-police report before the federal security referral; whether verification occurred elsewhere, and why this referral pathway was selected, remain unknown.

6. On September 5, 2025, at 6:26 a.m., an Albuquerque Police Department sergeant wrote to the director of social services at Central Desert Behavioral Health: "The US Marshals are also hoping to get an update to see if they need to put guards on the official he was threatening." Doc. 58 at 25. A Central Desert Behavioral Health note (Doc. 58 at 26) records that "Patient was seen by US Marshal in regards to a stalking charge against him and we therefore are waiting instruction that it is safe for the patient to be discharged to the community without being a threat or danger to others," and that a discharge scheduled for September 6, 2025 "will have to be postponed." An August 29, 2025 APD incident report records that, although the responding officer recorded an impression of acute psychosis, he concluded: "At this point, I did not have grounds to take Matthew for an involuntary mental health evaluation." Exhibit 3 at 6 (APD Incident Report No. 250071952). On September 5, Sergeant Tinney forwarded that report to USMS, noting that the officer had spoken with Defendant but had not taken him to the hospital. Id. at 5. Within about a week, then, four documents by four different authors used four different formulations: a subject line reading "threat," a "concern" for two Assistant United States Attorneys, "the official he was threatening," and "a stalking charge." None of them quotes a threat by Defendant.

7. On September 5, 2025, Deputy U.S. Marshal Kearby Bridges personally participated in an interview of Defendant at Central Desert Behavioral Health Hospital with another Deputy Marshal and two Albuquerque Police Department officers. Bridges documented the interview in a report dated September 12, 2025 (Exhibit 2, Bates 000018, page 1 of

5). The report identifies Bridges by name and records that the interview addressed Defendant's prior federal prosecution and related legal proceedings. The first page states that Sergeant Tinney recorded the interview by body camera and describes Defendant's demeanor as calm. The report is expressly described as an approximate account, not a verbatim transcript. Defendant requested the recording from the City of Albuquerque under the Inspection of Public Records Act (Request No. 25-15673, opened October 25, 2025, and renewed specifically for the Tinney recording by May 21, 2026). On July 31, 2026, the City advised that its staff was "still searching for additional video" and was "unable to provide any firm dates." The recording has not been produced to Defendant by the City or by the United States. The printed date on that page is April 10, 2026. The complaint in this case reports that in April 2026 the same Deputy Marshal notified the affiant of the charged transaction, took part in reviewing store video, and identified Defendant in it "through her past contact with CHANNON." Doc. 1 ¶¶ 6–8. These records establish continuity of personnel, but do not establish whether Bridges influenced the charging decision. Defendant offers Exhibit 2 only to show who took part in the interview and when, not for the truth of any statement in it.

8. The transaction alleged in Count 1 is dated April 1, 2026. ATF Report of Investigation 000140 (Exhibit 1) states that on April 6, 2026, Deputy U.S. Marshal Bridges was informed of a firearm denial notice for that transaction, and it bears an April 8, 2026 date. The report states that ATF Task Force Officer Cummings opened the ATF case on April 7, 2026 "after reviewing information concerning CHANNON," and that he "was notified by [DUSM Bridges] regarding her investigation on CHANNON." Exhibit 1 ¶¶ 1, 3. It does not identify who first supplied the denial information to Bridges, how that source learned of the notice, or why the information reached a Deputy Marshal previously involved in Defendant's federal security investigation. Nor does it establish

whether the information was routed through that earlier investigation. The origin and routing of the notification are unanswered questions, and they do not establish whether the investigation was independently initiated. The complaint was filed April 8, 2026 (Doc. 1, as replaced April 9, 2026), and the indictment on May 1, 2026 (Doc. 15). The docket identifies AUSA Sarah Jane Mease (terminated April 9, 2026) and AUSA Paul Mysliwiec as the attorneys for the United States. It does not identify Ms. Messec, Ms. Kohr, or Ms. Kastrin as counsel.

9. In this case the United States relies on "interview reports already presented at the original detention hearing" and refers to a danger finding by Magistrate Judge Molzen in support of its pending request for a competency evaluation. Doc. 56 at 1–2.

**III. WHAT THE RECORD DOES NOT SHOW**

10. The record does not show who decided to seek the complaint and the indictment; whether Ms. Messec, Ms. Kohr, or Ms. Kastrin participated in, was consulted about, or was screened from that decision; or whether Deputy U.S. Marshal Bridges supplied information or a charging recommendation; whether Bridges's September 12, 2025 Report of Investigation reached the charging attorneys; or whether the August 29, 2025 referral reached the charging attorneys and, if so, when. Nor does the record identify the original source of the firearm-denial information supplied to Bridges, the means by which it reached her, or whether the earlier security referral influenced its routing. Those facts are within the exclusive knowledge of the United States. Defendant asks that the United States answer them.

**IV. ARGUMENT**

11. Timeliness. Vindictive or selective prosecution and error in the grand-jury proceeding are Rule 12(b)(3)(A) matters that must be raised by the pretrial-motions

deadline. Defendant files before that deadline. If the Court regards any part of this motion as untimely, good cause exists under Rule 12(c)(3): counsel of record represented Defendant until October 16, 2026, and LR-Cr 44.2 barred him from filing while represented.

12. Vindictive prosecution. A defendant must show "actual vindictiveness or a realistic likelihood of vindictiveness." *United States v. Sarracino*, 340 F.3d 1148, 1177–78 (10th Cir. 2003); *United States v. Raymer*, 941 F.2d 1031, 1042 (10th Cir. 1991). There is no vindictiveness "as long as the prosecutor's decision is based upon the normal factors." *Raymer*, 941 F.2d at 1042. The Due Process Clause protects against retaliation for the exercise of a legal right. *Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974). Defendant does not invoke the presumption recognized in *United States v. Goodwin*, 457 U.S. 368 (1982).

13. Defendant seeks a limited inquiry grounded in the documented sequence and specific gaps identified above. Discovery on such a claim nevertheless requires a factual showing. *United States v. Armstrong*, 517 U.S. 456, 468–69 (1996), addresses selective-prosecution discovery; Defendant cites it by analogy, not as controlling authority on vindictiveness. The requested inquiry begins with objectively ascertainable facts about the source and routing of investigative information, the identities of participants, and the transmission of reports and referrals, rather than prosecutors' subjective deliberations.

14. Measured against that threshold, the record shows: (a) Defendant exercised legal rights by challenging the predicate conviction and by moving to recuse a judge in his appeal (¶ 3); (b) the prosecutor of that conviction, who in 2020 opposed his recusal motion by analogy to threat cases and by reference to a report to the Marshals Service (¶

3), initiated an information path to the Marshals Service in August 2025 under a subject line referring to a threat, although the body of her email quotes no threat by Defendant; she added Ms. Kastrin while noting that the original caller had not mentioned her, and Ms. Kohr carried that addition into the Marshals Service referral (¶¶ 4–6); (c) the descriptions shifted across four documents in about a week, and the hospital note attributed postponement of Defendant's discharge to awaiting safety instructions following Marshals Service involvement (¶ 6); (d) the United States relies in this case on interview reports and a detention finding, while the record does not establish whether those materials arose from or were influenced by the information path described above (¶ 9); and (e) the Deputy Marshal who took part in the September 5, 2025 interview (¶ 7) is the officer the complaint identifies as having notified the case agent and identified Defendant in the store video (Doc. 1 ¶¶ 6–8). The United States may point to the alleged April 1, 2026 transaction. But the existence of an investigative lead does not answer how Bridges first received notice, who decided to bring the charge, or whether the decision was materially influenced by retaliation for Defendant's prior exercise of legal rights. The documented overlap warrants inquiry into whether the earlier federal security investigation affected how the April 2026 allegation came to the attention of ATF or how the decision to charge was made. The declaration requested in Part V.B would identify the participants and the information available to them, including any indirect transmission of the earlier security allegations.

15. Grand-jury return. Rule 6(f) requires the grand jury, its foreperson, or deputy foreperson to return the indictment to a magistrate judge in open court, and permits the magistrate judge to take the return by video teleconference from the court where the grand jury sits. Fed. R. Crim. P. 6(f). The Court may authorize disclosure of a grand-jury

matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii); see *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979) (particularized need). Dismissal for a grand-jury irregularity requires a showing that it substantially influenced the decision to indict. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988). Defendant does not ask the Court to adjudicate a grand-jury irregularity on the present record. He seeks confirmation of the return before determining whether any further request is warranted. The public docket shows Document 15, a "Redacted Indictment," entered May 1, 2026, with no corresponding public minute entry for a return. Defendant asks only that the Court confirm from its own records that the indictment was returned in accordance with Rule 6(f), including any permitted video-teleconference procedure, and, if the record of the return is sealed, that it so state. He does not seek grand-jury transcripts or deliberations.

**V. RELIEF REQUESTED**

WHEREFORE, Defendant respectfully requests that the Court:

A. Dismiss the indictment under Rule 12(b)(3)(A)(iv).

B. In the alternative, order the United States, within 14 days, to file a declaration by a person with knowledge stating (1) the name and position of each person who recommended or approved seeking the complaint and the indictment; (2) whether C. Paige Messec, Lael Kohr, or Holland Kastrin participated in, was consulted about, or received information concerning that decision; (3) whether any of them has been screened from this prosecution and, if so, when; (4) whether Deputy U.S. Marshal Kearby Bridges or Acting Supervisory Deputy U.S. Marshal Sergio Hermosillo recommended charges, provided information to the charging attorneys, or transmitted

Bridges's September 12, 2025 Report of Investigation or communicated its contents to them, and when; (5) whether and when the materials at Doc. 58, pp. 23–25, or their substance, were provided to the charging attorneys; (6) who first notified Bridges of the alleged April 2026 firearm denial, by what means, and how that source obtained the information; and (7) whether the United States or a participating federal agency possesses or obtained Sergeant Tinney's September 5, 2025 body-camera recording, and whether any charging decision-maker received or reviewed it.

C. Order the United States to produce, or if it asserts privilege to log and submit for in camera review, written communications between August 29, 2025 and May 1, 2026 between Ms. Messec, Ms. Kohr, Ms. Kastrin, DUSM Bridges, or Acting Supervisory DUSM Hermosillo and the prosecuting attorneys, the Marshals Service, or ATF concerning the source, routing, transmission, or use of information from the August 2025 security referral or the alleged April 2026 firearm transaction bearing on the decision to investigate or charge Defendant.

D. Allow Defendant 14 days after the declaration and production to supplement this motion, and set an evidentiary hearing on dismissal if they provide evidence that any person identified in Part II participated in, recommended, or materially influenced the charging decision in a manner potentially connected to retaliation for Defendant's earlier exercise of legal rights.

E. Confirm, from the Court's records, that the indictment was returned in accordance with Federal Rule of Criminal Procedure 6(f), including any permitted video-teleconference procedure, or state that the record of the return is sealed.

F. Grant such further relief as the Court deems appropriate.

Respectfully submitted,

Matthew James Channon
Defendant, Pro Se without Representation
7100 Gladden Ave NE
Albuquerque, NM 87110
505-288-5566
mattchannon@pm.me

**CERTIFICATE OF SERVICE**

I certify that on October 16, 2026, I filed the foregoing with the Clerk of the Court. Counsel of record for the United States will receive notice through the Court's CM/ECF system upon docketing.

Matthew James Channon

**EXHIBIT INDEX**

Exhibit 1: ATF Report of Investigation (Bates 000140), all pages.

Exhibit 2: USMS Report of Investigation, No. USM-11-25-159240 (Bates 000018), page 1 of 5 only (excerpt), offered to show who took part in the September 5, 2025 interview and when.

Exhibit 3: City of Albuquerque IPRA / USMS access correspondence and APD Incident Report No. 250071952 (7 pages), including the August 29, 2025 APD assessment and September 5 transmission to USMS.

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

# Report of Investigation

| Title of Investigation: | Investigation Number: | Report Number: |
| --- | --- | --- |
| CHANNON, Matthew James | 26-12771 | 1 |

**SUMMARY OF EVENT:**

On April 7, 2026, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Task Force Officer (TFO) Geoffrey Cummings initiated a case into Matthew James CHANNON after reviewing information concerning CHANNON, a convicted felon, who attempted to purchase a firearm on April 1, 2026, from Federal Firearms Licensee (FFL) Bass Pro Shop, located at 5151 Lang Ave NE, Albuquerque, NM, 87109. During this attempted purchase, CHANNON provided false information about his felony status on ATF Form 4473-Firearms Transaction Records. On April 8, 2026, TFO Cummings obtained a signed federal criminal complaint and arrest warrant for CHANNON for 18 USC 922(a)(6)- Knowingly Making False Statements in Connection with the Purchase of a Firearm The criminal complaint was signed by the Honorable U.S Magistrate Judge Steven C. Yarbrough.

**NARRATIVE:**

1. On April 7, 2026, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Task Force Officer (TFO) Geoffrey Cummings initiated a case into Matthew James CHANNON after reviewing information concerning CHANNON, a convicted felon, who attempted to purchase a firearm on April 1, 2026, from Federal Firearms Licensee (FFL) Bass Pro Shop, located at 5151 Lang Ave NE, Albuquerque, NM, 87109. During this attempted purchase, CHANNON provided false information about his felony status on ATF Form 4473-Firearms Transaction Records. On April 8, 2026, TFO Cummings obtained a signed federal criminal complaint and arrest warrant for CHANNON for 18 USC 922(a)(6)- Knowingly Making False Statements in Connection with the Purchase of a Firearm The criminal complaint was signed by the Honorable U.S Magistrate Judge Steven C. Yarbrough.

2. This report is a summary. When statements and observations are reported herein, they are reflected in sum, substance, and part. For additional details please reference attachments in their entirety.

3. ATF Task Force Officer (TFO) Cummings was notified by U.S. Marshals Service (USMS) Deputy (DUSM) Kearby Bridges regarding her investigation on CHANNON who attempted to purchase a firearm on April 1, 2026, from Federal Firearms Licensee (FFL) Bass Pro Shop, located at 5151 Lang Ave NE, Albuquerque, NM, 8710 to include CHANNON providing false information about his felony status on ATF Form 4473.

| Prepared by: | Title: | Signature: | Date: |
| --- | --- | --- | --- |
| Geoffrey Cummings | Task Force Officer | [signature] | 04/08/2026 |
| Authorized by: Brenton Hutson | Title: Resident Agent in Charge | Signature: [signature] | Date: 04/08/2026 |
| Second level reviewer (optional): | Title: | Signature: | Date: |





Ex. 1

| Title of Investigation: CHANNON, Matthew James | Investigation Number: 26-12771 | Report Number: 1 |
|---|---|---|

4. On April 6, 2026, DUSM Bridges was informed of a Firearm Denial Notice that advised CHANNON was denied during a firearm background check on April 1, 2026, at 11:48 a.m. at the Bass Pro Outdoor World, LLC located at 5151 Lang Ave NE, Albuquerque, NM, 87109. The basis for the denial was CHANNON's prior felony conviction, that is a crime punishable by imprisonment for a term exceeding one year.

5. On that same date, USMS Deputies advised they spoke with management at the Bass Pro Shop. During this time, video footage was pulled by management and reviewed by Deputies, including DUSM Bridges. DUSM Bridges advised the video showed CHANNON enter the Bass Pro Shop at approximately 9:03 a.m. on April 1, 2026. CHANNON was noted wearing a black shirt, blue jeans with white shoes. DUSM Bridges advised she was able to identify CHANNON as the male in the security footage wearing the black shirt, blue jeans with white shoes through her past contact with CHANNON to further include being able to identify CHANNON through past photographs.

6. During his time at Bass Pro Shot, CHANNON completed paperwork to request to purchase an AR-style shotgun (Model: Ermox XPRO T shotgun, chambered in 12 gauge, with serial number 630-H24PT-12925).

7. On April 6, 2026, DUSM Bridges spoke with ATF Resident Agent in Charge (RAC) Brenton Hutson who confirmed CHANNON had filled out ATF Form 4473- Firearms Transaction Records, indicating he was not a convicted felon. TFO Cummings reviewed a copy of ATF Form 4473- Firearms Transaction Records, and confirmed the form reflected the requested purchase of one long gun, as described above.

8. On ATF Form 4473, CHANNON indicated he was the actual buyer/transferee of the listed long gun. In response to the question: "Have you ever been convicted in any court, including military court, of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?" CHANNON checked the box "No." On ATF Form 4473, CHANNON further signed to certify his answers were "true, correct, and complete." I am aware that the ATF Form 4473 asks about a purchaser's felony status because this is a fact that is material to the lawfulness of the sale/purchase of a firearm. There is probable cause to believe that CHANNON lied about his felony status with the intention of deceiving the dealer about this material fact.

9. On April 7, 2026 TFO Cummings obtained and reviewed a prior Judgment issued in the United States District Court, District of New Mexico, in Cause No. 13-CR-0966-JCH, indicating CHANNON was sentenced on October 20, 2016, for five counts of wire fraud, in violation of Title 18, United States Code, Section 1343. *U.S. v. Channon,* 13-CR-0966-JCH, Doc. 379. CHANNON was sentenced to a term of imprisonment of twelve months and 1 day on each count of conviction. Following an appeal, the judgment became final on or about October 1, 2018. CHANNON completed his custodial sentence and was terminated from supervised release on December 3, 2021.

10. Based on the foregoing facts, TFO Cummings determined there was probable cause to believe CHANNON committed a violation of Title 18, United States Code, Section 922(a)(6) – Knowingly Making False Statements in Connection with the Purchase of a Firearm, on or about April 1, 2026, within the District of New Mexico. TFO Cummings authored a warrant be issued for CHANNON's arrest.

11. On April 8, 2026, TFO Cummings obtained a signed federal criminal complaint and arrest warrant for CHANNON for 18 USC 922(a)(6)- Knowingly Making False Statements in Connection with the Purchase of a Firearm The criminal complaint was signed by the Honorable U.S Magistrate Judge Steven C. Yarbrough.

| Title of Investigation: CHANNON, Matthew James | Investigation Number: 26-12771 | Report Number: 1 |
|---|---|---|

**ATTACHMENTS:**

1. Copy of arrest warrant return for 26-MJ-1630
2. Copy of criminal complaint return for 26-MJ-1630
3. Copy of ATF Form 4473 from the Bass Pro Outdoor World, LLC located at 5151 Lang Ave NE, Albuquerque, NM dated April 1, 2026.
4. Judgement and Sentencing Court Records reference 13-CR-0966-JCH, Doc. 379

**U.S. Department of Justice**
United States Marshals Service

**USM-11-25-159240**
Printed on: 04/10/2026 at 10:17 MDT


# REPORT OF INVESTIGATION

**FID:** [redacted]
**Subject Name:** CHANNON, MATTHEW
**Associated Cases:** [redacted]

**Type of Report:** [redacted]
**Reporting District:** D/NM - ALBUQUERQUE
**Reported By:** KEARBY BRIDGES (Deputy US Marshal (DUSM))
**Reported Date/Time:** 09/12/2025 at 13:27 MDT
**Approved By:** [redacted]
**Approved Date/Time:** 09/12/2025 at 14:27 MDT
**BWC Footage Exists?** N/A
**BWC Footage Reviewed?** N/A

Interview

On 09/05/2025, at approximately 10:00am, Deputy U.S. Marshals (DUSMs) Kearby Bridges, Acting Supervisory DUSM Sergio Hermosillo, Albuquerque Police Department (APD) Sergeant Matt Tinney with the Crisis Intervention Team (CIT), and APD Officer Horace Hackey with CIT interviewed Matthew CHANNON in person at Central Desert Behavioral Health Hospital, address 1525 N. Renaissance Blvd. NE Albuquerque, NM 87107.

Sergeant Tinney recorded the interview via body camera. The report below is an approximate version of the interview and does not include everything that was said or discussed during the interview. CHANNON was told he could leave the interview at any time.

After being advised of the identities of the interviewing Deputies and officers and the nature of the interview, Matthew CHANNON voluntarily provided the following information:

CHANNON's demeanor throughout the interview was calm. He spoke slowly and clearly.

CHANNON stated that he went to the hospital in Amarillo, Texas believing he had been poisoned through his water, and that people may have been replacing his water with poison. He stated he stayed at that hospital for seven days until he was released, at which time his parents took him home to his house on Thursday. He said the hospital had referred him to someplace in Albuquerque. He said he had not been given any prescriptions or medications at this hospital, except something "under his tongue" once. CHANNON said he believes the three diet pills he took prior to this (purchased on Alibaba) may have made him sick. He said he had developed a thought the pills may have been altered in shipment. He said maybe he was taking them faster than he should have and they were giving him side effects. He stated the hospital did not give him any medications.

CHANNON said he had not been feeling angry or upset prior to this but was focused on legal proceedings he had going on and giving it a lot of attention. He stated he had visited the courthouse to get documents from the clerk but was unable to get the documents.

CHANNON said he and his wife had gone through a divorce proceeding and a mediation to come to an agreement. He said he looked at the dockets afterwards and believed it was dismissed. He wasn't sure if he was divorced or not. He said he doesn't want to cheat if he is still married. He said maybe someone was hacking his phone or showing him a "funhouse mirror" of reality. CHANNON said he wanted to do what he does best in engineering and do his best for his son.

CHANNON told us about the case (1:24-13-CR966) brought against him in 2011. He said his house was raided in 2011 and he and his wife were indicted in 2013. He said in 2016 there was a trial in which they were both convicted by a jury. He said he was sentenced to a year and a day and served his sentence 2019-2020, finishing his sentence in a halfway house in Albuquerque. He said he did not want to keep dwelling on it but keeps seeing weird things going on with it. CHANNON said he went to the 10th circuit in Denver to hear his case argued.

CHANNON said he met the judge (Paul Kelly) who was on his appeals case in Denver. He stated he met the Judge on the plane having been seated next to him and the Judge had "ran off" the plane quickly. He said a few words to him but didn't threaten him. He said he had spoken to "a few of you folks," implying officers or DUSMs, telling him not to approach anymore judges. CHANNON said he never approached a judge again.

CHANNON said he wanted to bury all this stuff and that he had paid enough for the wrongs he'd done. He said he may have some ill will towards people and has published some stuff. He said he is happy to take it down. He wants his life to be more about the things he can invent. He stated he wants to be happy rather than right.

CHANNON published a YouTube video and a website "dirtyprosecutor.org." CHANNON said he hasn't been able to see the real internet, and someone is messing with him. He said his devices seem like they have been hacked. He said he doesn't want to pursue any of it

Confidentiality Notice: This report contains unclassified law enforcement sensitive information and is the property of the U.S. Marshals Service. Neither it nor its content may be disseminated outside the agency or personnel to which loaned without prior U.S. Marshals Service Authority. It is to be maintained, distributed, secured and disposed of in a manner that will protect the information against unauthorized disclosure and in accordance with The Privacy Act of 1974, 5 USC § 552A.
UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE



Ex. 2

DOC. 13 SUPPLEMENT
EXHIBIT
3
City IPRA
USMS access
9/14/2026

**From:** "Sanchez, Gabriel (USMS)" <Gabriel.Sanchez@usdoj.gov>
**To:** "Pelot, Jerrod C." <jpelot@cabq.gov>
**Subject:** Fw: Matt Channon threat
**Date:** Fri, 29 Aug 2025 21:56:44 +0000
**Importance:** Normal

---

**This Message Is From an External Sender**
This message came from outside your organization.

Report Suspicious

Get Outlook for iOS

---

**From:** Kohr, Lael (USANM) <Lael.Kohr@usdoj.gov>
**Sent:** Friday, August 29, 2025 3:10:08 PM
**To:** USMS-NMD-JSU <USMS-NMD-JSU@usms.doj.gov>
**Cc:** Brawley, Kimberly (USANM) <Kimberly.Brawley@usdoj.gov>; Wagner, Glenn (USANM) <Glenn.Wagner@usdoj.gov>
**Subject:** FW: Matt Channon threat

Sorry for the late afternoon before a long weekend report. Please see the below summary from AUSA Paige Messec regarding a concern for her and AUSA Holland Kastrin. There is some VERY concerning information in this summary. Please let me know ASAP what you all feel we should be doing at this time.

**Lael J. Kohr**
*Supervisor, Facility and Support Services*
*District Office Security Manager (DOSM)*
United States Attorney's Office • District of New Mexico
201 3rd Street NW, Ste. 900 • Albuquerque, NM 87102
Desk 505.224.1534 • Mobile 505.350.8189

**-Lael**
Desk 505.224.1534
Mobile 505.350.8189

**From:** Messec, Paige (USANM) <Paige.Messec@usdoj.gov>
**Sent:** Friday, August 29, 2025 2:55 PM
**To:** Kohr, Lael (USANM) <Lael.Kohr@usdoj.gov>
**Subject:** RE: Matt Channon threat

I should add that Holland Kastrin was also involved in the case (in fact, she took it to trial while I was on maternity leave). Brandi did not mention her.

**From:** Messec, Paige (USANM)
**Sent:** Friday, August 29, 2025 2:54 PM
**To:** Kohr, Lael (USANM) <Lael.Kohr@usdoj.gov>
**Subject:** Matt Channon threat

Lael, to follow up on my phone call, I received a call a few minutes ago from Brandi Channon, wife (possibly estranged wife or ex wife) of Matthew Channon. The Channons were defendants in a white-collar case of mine from about ten years ago. They were both convicted of wire fraud; she got probation and he got 12 months custody. The case number is 13-CR-966.

Brandi was very upset and reported that Matt Channon has gone crazy and believes that I am trying to kill him. He believes I am poisoning his drinks (also that she may be doing so). He also may believe that I am trying to frame Brandi for killing him. She said that she believes he is following me, and she thinks that he sent a video to her son today showing a car at nighttime that Matt said was mine. (She described it as a green sedan, which is not a car that I drive.) Matt told Brandi that he knows my license plate number. She mentioned that Matt had been on a 72-hour emergency hold in Amarillo, TX, but was discharged Thursday (I presume yesterday). She thinks he is back in town and said something about him parking his truck at the FBI. His parents are reportedly looking for him. She is scared and has her kid or kids with family members so he can't get to them.

Brandi's cell phone is 505-30[redacted]0. I told her that I would alert the appropriate people at my office and that someone would likely reach out to her.

Paige

**From:** "Kimberly Smith (0739-Dir of SocSvcs-CDBH)" <kimberly.smith0739@fundltc.com>
**To:** "Tinney, Matthew A." <mtinney@cabq.gov>
**Subject:** Re: Hoping to see MC
**Date:** Fri, 5 Sep 2025 13:13:15 +0000
**Importance:** Normal

---

**This Message Is From an External Sender**
**This message came from outside your organization.**

Report Suspicious

Perfect thank you.

Get Outlook for iOS

---

**From:** Tinney, Matthew A. <mtinney@cabq.gov>
**Sent:** Friday, September 5, 2025 7:07:02 AM
**To:** Kimberly Smith (0739-Dir of SocSvcs-CDBH) <kimberly.smith0739@fundltc.com>
**Subject:** Re: Hoping to see MC

EXTERNAL EMAIL: This email originated from outside of Fundamental's email system. DO NOT click links, open attachments or take action unless you recognize the sender and know the content is safe.

---

10 would be great. Thank you so much
Sent from my iPhone

On Sep 5, 2025, at 6:59 AM, Kimberly Smith (0739-Dir of SocSvcs-CDBH) <kimberly.smith0739@fundltc.com> wrote:

Can you come at 10? Or after 1:00pm?

Get Outlook for iOS

---

**From:** Tinney, Matthew A. <mtinney@cabq.gov>
**Sent:** Friday, September 5, 2025 6:55:52 AM
**To:** Kimberly Smith (0739-Dir of SocSvcs-CDBH) <kimberly.smith0739@fundltc.com>
**Subject:** Re: Hoping to see MC

EXTERNAL EMAIL: This email originated from outside of Fundamental's email system. DO NOT click links, open attachments or take action unless you recognize the sender and know the content is safe.

---

Today if possible. Is there a time that works best for you all?
Sent from my iPhone

On Sep 5, 2025, at 6:28 AM, Kimberly Smith (0739-Dir of SocSvcs-CDBH) <kimberly.smith0739@fundltc.com> wrote:

Good morning, he is on the list on for tomorrow to discharge. Would you like to come today?

Get Outlook for iOS

---

**From:** Tinney, Matthew A. <mtinney@cabq.gov>
**Sent:** Friday, September 5, 2025 6:26:44 AM
**To:** Kimberly Smith (0739-Dir of SocSvcs-CDBH) <kimberly.smith0739@fundltc.com>
**Subject:** Hoping to see MC

EXTERNAL EMAIL: This email originated from outside of Fundamental's email system. DO NOT click links, open attachments or take action unless you recognize the sender and know the content is safe.

---

Hi Kim,

I got your email from Mike Lucero. I am not sure if you are still with Central Desert, but if you are, I was wondering if there would be a time that works that we could meet with Matthew Channon before he is discharged. We just wanted to connect and see if there is anything he needs help with back in the community. The US Marshals are also hoping to get an update to see if they need to put guards on the official he was threatening.

**-Matt-**

**Sergeant Matthew Tinney**
**Crisis Intervention Unit**

Albuquerque Police Department
*Crisis Intervention Division*
**Office Phone: 505.924.6009**
Cell Phone: 505.553.2229
mtinney@cabq.gov

<image001.jpg>

**From:** "Tinney, Matthew A." <mtinney@cabq.gov>
**To:** "Hermosillo-Murillo, Sergio (USMS)" <sergio.hermosillo-murillo@usdoj.gov>, "Hackney, Horace" <hhackney@cabq.gov>
**Subject:** MC report
**Date:** Fri, 5 Sep 2025 13:43:26 +0000
**Importance:** Normal
**Attachments:** Report_Packet_-_250071952_Offense_Incident__Incident___INCIDENT.pdf
**Inline-Images:** image001.jpg

---

This is the only thing I can find in our system on him that is recent. 8/29/25 officer talked to him but did not take him to the hospital.

**-Matt-**

**Sergeant Matthew Tinney**
**Crisis Intervention Unit**

Albuquerque Police Department
*Crisis Intervention Division*
**Office Phone: 505.924.6009**
Cell Phone: 505.553.2229
mtinney@cabq.gov

POLICE

**Albuquerque Police Department**

## Report # 250071952 - Offense/Incident Report

| REPORT CREATED DATE/TIME | AREA COMMAND / SECTOR / BEAT | INCIDENT DATE / TIME - FROM - INCIDENT DATE / TIME - TO |
|---|---|---|
| Aug 29, 2025 03:47 | NORTHEAST / 42 / 422 | Aug 29, 2025 02:45 - 04:00 |

| PRIMARY REPORTER | BODY WORN CAMERA? |
|---|---|
| Daniel Butzier #P8015 | Yes - Video Footage Available - Evidence.com |

REPORT TAKEN LOCATION

[redacted]GLADDEN AV NE, ALBUQUERQUE, NM 87110

EMS / FIRE / OTHER LE AGENCIES ON SCENE

☐ YES ■ NO

## SYNOPSIS

I spoke with Matthew Channon, who appeared to be experiencing a behavioral health incident. I am submitting a crisis intervention team referral for Matthew.

## NARRATIVE

On August 29th, 2025 at approximately 0245 hours, I was dispatched to a residence located at [redacted] Yellowstone Rd NE in response to a suspicious person. Comments on the call stated that a security employee of the FBI field office called in stating that an adult male came to the office and was saying that his wife had poisoned him and he wanted to give evidence to the government. The male drove away in a blue Ford Maverick bearing NM plate [redacted]P". The registered owner of this vehicle is a Patricia Channon, and her listed address is [redacted] Yellowstone Rd NE. Officers were dispatched to check on the situation and attempt to locate the male.

Upon arrival, I spoke with Patricia Channon. She informed me that her son Matthew Channon had just been released from a psychiatric facility in Alamogordo, and was experiencing a mental health crisis. Patricia stated that her and her husband had picked him up from there the previous day, and had dropped him off at his house which is located at [redacted] Gladden Ave NE. While I was speaking with Patricia, I was informed by police dispatch that a call for service had come in at Matthew's residence, and the comments on the call stated that the caller was saying that he had been poisoned and was requesting paramedics.

Myself and Officer N. Chavez then drove to Matthew's residence, where we made contact with him at the front door. Matthew appearing to be experiencing acute psychosis, and seemed to be detached from reality. This was evidenced by him making bizarre statements, claiming that he was poisoned by a US Attorney who was also his ex-wife's attorney. I asked Matthew if I could summon paramedics to treat him, and he stated that he did not want medical attention through the police. I asked Matthew if I could take him to a hospital for a mental health evaluation, and he also refused this. I asked Matthew how police could assist him, and he stated that he wanted us to go away. At this point, I did not have grounds to take Matthew for an involuntary mental health evaluation. I told Matthew to call police if he needed our assistance.

As myself and Officer N. Chavez were driving back to the Foothills area command, I was informed by dispatch that they had received a call from one of Matthew's neighbors that stated Matthew had knocked on their door stating that he needed medical attention. I drove back to Matthew's residence, where I met with Patricia, Matthew's father, and AAS paramedics. Patricia had a key to Matthew's home, and asked if they could enter the residence to attempt to locate Matthew. I informed her that she could do this, and police would stand outside the front door in case they found Matthew. Patricia was unable to locate Matthew in the house.

Myself and Officer N. Chavez drove around the neighborhood and surrounding area in an attempt to locate Matthew, but we were unsuccessful. We were informed by a neighbor that Matthew was wearing a wig and women's clothing. I advised Patricia to call back if she wished to report Matthew as missing, and that I would be submitting a CIT contact sheet for Matthew. My on-body recording device captured this incident, and the footage was uploaded to Evidence.com.

*REPORTING PARTY/COMPLAINANT-1*

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| PRINT NAME | PRINT NAME |
| Daniel Butzier #P8015 Aug 30, 2025 20:32 | Adam Golson #5785 Aug 30, 2025 21:19 |

REPORTING PARTY/COMPLAINANT-1 (PERSON) | DOB / ESTIMATED AGE RANGE
R-1 CHANNON, MATTHEW JAMES | 1977-[redacted]

SEX: Male
RACE / ETHNICITY: White / Not Hispanic Or Latino
PHONE NUMBER: (505)[redacted](primary, Mobile Phone)

HOME ADDRESS
[redacted] GLADDEN AV NE, ALBUQUERQUE, NM 87110

REPORTING PARTY SIGNATURE

## INCIDENT

INCIDENT TYPE
Incident I INCIDENT

INCIDENT STATISTICS

- ☐ Attempted Suicide
- ☐ ERPO
- ☐ Gun Involved
- ☐ OCME Case (Autopsy)
- ☐ Peace Order
- ☐ Protective Order
- ☐ Suspected Suicide
- ☐ Body Released to Family
- ☐ Emergency Evlauation
- ■ Mobile Crisis/CIT Referral
- ☐ OCME Case (No Autopsy)
- ☐ Physician Will Sign Death Certificate
- ☐ Suspected Opioid Related
- ☐ Under 18 Years Old

### *OFFENSE LOCATION*

LOCATION NAME / STREET ADDRESS/LOCATION NAME / APT, UNIT, STE / DESCRIPTION
[redacted] GLADDEN AV NE

| CITY | STATE | ZIP | COUNTRY CODE |
|---|---|---|---|
| ALBUQUERQUE | NM | 87110 | US |

LOCATION CATEGORY: Residence/Home
AREA COMMAND / SECTOR / BEAT: NORTHEAST / 42 / 422

### *SUBJECT-1*

SUBJECT-1 NAME (LAST, FIRST MIDDLE) | DOB / ESTIMATED AGE RANGE
SB-1 CHANNON, MATTHEW JAMES | 1977-[redacted]

SEX: Male
RACE / ETHNICITY: White / Not Hispanic Or Latino
PHONE NUMBER: (505) [redacted] (primary, Mobile Phone)

HOME ADDRESS
[redacted] GLADDEN AV NE, ALBUQUERQUE, NM 87110

### *INVOLVED OTHER-1*

INVOLVED OTHER-1 (PERSON) | DOB / ESTIMATED AGE RANGE
O-1 CHANNON, PATRICIA ANN | 1945-[redacted]

SEX: Female
RACE / ETHNICITY: White / Not Hispanic Or Latino
PHONE NUMBER: (505)[redacted] (primary, Mobile Phone)

HOME ADDRESS
[redacted] YELLOWSTONE RD NE, ALBUQUERQUE, NM 87111

## ADDITIONAL INFORMATION

### *USE OF FORCE ADDITIONAL INFORMATION (TO THE BEST OF YOUR KNOWLEDGE)*

WAS REPORTABLE USE OF FORCE USED IN THE INCIDENT?
No

WERE LOW LEVEL CONTROL TACTICS USED IN THE INCIDENT?
No

## RELATIONSHIPS ADDENDUM

| NAME | RELATIONSHIP | SUBJECT |
|---|---|---|
| MATTHEW JAMES CHANNON | CHILD OF | PATRICIA ANN CHANNON |

REPORTING OFFICER SIGNATURE / DATE
PRINT NAME
Daniel Butzier #P8015 Aug 30, 2025 20:32

SUPERVISOR SIGNATURE / DATE
PRINT NAME
Adam Golson #5785 Aug 30, 2025 21:19