**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 1:26-cr-02056-MLG

MATTHEW JAMES CHANNON,

Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before the Court on defendant Matthew James Channon's Motion to Dismiss for Vindictive Prosecution, or, in the Alternative, for a Limited Evidentiary Showing on the Charging Decision (Rule 12(b)(3)(A)(iv)); For Confirmation of the Grand-Jury Return (Rules 6(e)(3)(E)(ii) and 6(f)), filed October 16, 2026. Doc. 68. The United States filed its response on October 22, 2026, Doc. 76, and Mr. Channon filed his reply on October 30, 2026, Doc. 82. United States District Judge Matthew Garcia referred this motion to me "to perform any legal analysis required to recommend to the Court an ultimate disposition" of the Motion to Dismiss. Doc. 83. Having read the briefing and being fully advised in the premises, I recommend that the motion be DENIED.

## BACKGROUND

In 2016, Mr. Channon and his wife, Brandi Channon, were convicted of several counts of wire fraud. *United States of America v. Matthew Channon* ("*Channon I*"), Case No. 1:13-cr-00966-JCH-SMV, Docs. 379–80. Mr. Channon was sentenced to a term imprisonment of 12 months and 1 day. *Channon I*, Doc. 379 at 3. Ms. Channon was sentenced to a term of three years' probation. *Channon I*, Doc. 380 at 3. The original assistant United States attorney

("AUSA") in *Channon I* was Paige Messec, with AUSAs Holland Kastrin and Margaret Vierbuchen presenting the case at trial. *See generally Channon I*; *see also* Doc. 68 at 2; Doc. 76 at 1.

Mr. Channon appealed his criminal case to the Tenth Circuit. Doc. 68 at 2; *Channon I*, Doc. 382. Tenth Circuit judge Paul Kelly affirmed in part and remanded in part, upholding the district court's evidentiary decisions but remanding for further proceedings on the order of forfeiture. *United States v. Channon*, 881 F.3d 806 (10th Cir. 2018). The district court entered an amended order of forfeiture, *Channon I*, Doc. 509, which Mr. Channon then appealed, *Channon I*, Doc. 510. On March 12, 2020, the date his second appeal was argued, Mr. Channon ended up on the same return flight from Denver to Albuquerque as Judge Kelly, who ruled on Mr. Channon's first appeal. Doc. 58 at 38. Mr. Channon conversed with Judge Kelly, asking the judge if he "had ever met anyone whose life he had ruined through one of his opinions"; when Judge Kelly responded in the negative, Mr. Channon stated, "well now you have." *Id.* Following this interaction Mr. Channon's probation officer questioned him about the meeting and warned him that "any further conversations with any judge would constitute a violation." *Id.* at 39. Mr. Channon sought to recuse Judge Kelly from the case. *Id.* In response, AUSA Messec argued that a litigant was not permitted "to manufacture the appearance of bias such as by purposefully engaging a judge in conversation and then insulting him." *Id.* at 47. She analogized the situation to threat cases, though admitting that they involved "more serious conduct than that at issue here," for the proposition that litigants should be "discouraged from acting badly in the hopes of obtaining a recusal." *Id.* at 48.

On August 29, 2025, AUSA Messec emailed security personnel with a subject line stating, "Matt Channon threat." Doc. 68 at 16. She stated that she had received a phone call "a

few minutes ago from Brandi Channon, wife (possibly estranged wife or ex wife) of Matthew Channon." *Id.* at 17. She identified and summarized *Channon I*. *Id.* She then stated,

> Brandi was very upset and reported that Matt Channon has gone crazy and believes that I am trying to kill him. He believes I am poisoning his drinks (also that she may be doing so). He also may believe that I am trying to frame Brandi for killing him. She said she believes he is following me, and she thinks that he sent a video to her son today showing a car at nighttime that Matt said was mine. (She described it as a green sedan, which is not a car that I drive.) Matt told Brandi that he knows my license plate number. She mentioned that Matt had been on a 72-hour emergency hold in Amarillo, TX, but was discharged Thursday (I presume yesterday). She thinks he is back in town and said something about him parking his truck at the FBI. His parents are reportedly looking for him. She is scared and has her kid or kids with family members so he can't get to them.

*Id.* AUSA Messec also mentioned that AUSA Kastrin was involved in *Channon I* and took it to trial, but she stated, "Brandi did not mention her." *Id.* at 16. This email was forwarded to others with the statement, "There is some VERY concerning information in this summary." *Id.*

On September 5, 2025, Mr. Channon was a patient at Central Desert Behavioral Health Hospital. *See id.* at 19. An APD sergeant emailed an employee of the facility to meet with Mr. Channon before his discharge and provide information to the US Marshals, who were "hoping to get an update to see if they need to put guards on the official he was threatening." *Id.* Marshals and Albuquerque Police Department ("APD") officers met with Mr. Channon that day. *Id.* at 15. One of the marshals present was Deputy U.S. Marshal ("DUSM") Kearby Bridges, who documented the interview in a report. *Id.* A record from the hospital states, "Patient was seen by USA Marshall [sic] in regards to a stalking charge against him and we therefore are waiting [sic] instruction that it is safe for the patient to be discharged to the community without being a threat or danger to others." Doc. 58 at 26.

Seven months later, on April 6, 2026, DUSM Bridges "was informed of a Firearm Denial Notice that advised CHANNON was denied during a firearm background check on April 1,

2026, at 11:48 a.m. at the Bass Pro Outdoor World, LLC." Doc. 68 at 13. DUSM Bridges investigated this incident and notified another officer, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Task Force Officer Geoffrey Cummings, who conducted further investigation and ultimately submitted the federal criminal complaint and arrest warrant for Mr. Channon in the present case. *Id.* at 12; *see also* Doc. 1.

On May 1, 2026, a federal grand jury returned a single-count indictment against Mr. Channon accusing him of making a false statement during the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924. Doc. 15. Specifically, the grand jury charged that on or about April 1, 2026, Mr. Channon went to Bass Pro Shops in Albuquerque, New Mexico, and knowingly made a false statement in connection with the purchase of an Ermox XPro-T 12 gauge12-gauge. *Id.* The indictment alleges that Mr. Channon stated that he had not ever been convicted of a felony, when in fact he had been convicted of a felony, specifically, conspiracy to commit wire fraud and wire fraud. *Id.*

Mr. Channon currently represents himself pro se with court-appointed counsel, Maxwell Pines, on standby. Doc. 67 at 1, 9–10. The pending motion to dismiss at issue in these proposed findings and recommended disposition was filed pro se.

## LEGAL STANDARD

In a vindictive prosecution claim, "[the] defendant has the burden of proof and must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991). A finding of actual vindictiveness "requires direct evidence, such as evidence of a statement by the prosecutor, which is available only in a rare case." *United States v. Rodella*, 59 F. Supp. 3d 1331, 1350 (D.N.M. 2014) (quoting *United States v. Johnson*, 221 F.3d 83, 94 (2d

Cir. 2000)). In the absence of direct evidence, the Court examines whether, "as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right." *Raymer*, 941 F.2d at 1042. If a defendant makes this showing, "the burden shifts to the prosecution to justify its decision with legitimate, articulable, objective reasons," but if the defendant does not make the threshold showing, the inquiry ends there without reference to the government's justification. *Id.* at 1040.

**ANALYSIS**

In the motion at issue, Mr. Channon seeks dismissal of the indictment "on the ground of vindictive prosecution." Doc. 68 at 1. He argues that the following facts support his conclusion.

1) He exercised his legal rights "by challenging the predicate conviction [in *Channon I*] and by moving to recuse a judge in his appeal." *Id.* at 7.

2) The prosecutor in *Channon I*, AUSA Messec, analogized Mr. Channon's interaction with Judge Kelly to threat cases in her opposition to Mr. Channon's motion to recuse Judge Kelly. *Id.*

3) AUSA Messec emailed security personnel with a subject line that referred to a threat by Mr. Channon, even though the body of the email did not contain any reference to Mr. Channon threatening her. *Id.* at 8. AUSA Messec also mentioned AUSA Kastrin even though the original caller, Ms. Channon, had not mentioned AUSA Kastrin. *Id.*

4) The APD sergeant's email to the Central Desert Behavioral Health Hospital employee and the hospital record refer to threats and stalking. *Id.* The hospital record "attributed postponement of Defendant's discharge to awaiting safety instructions following Marshals Service involvement." *Id.*

5) In the present case, the United States "relies . . . on interview reports and a detention finding, while the record does not establish whether those materials . . . were influenced by" AUSA Messec's communications or any of the ensuing communications of the Marshals or APD. *Id.*

6) DUSM Kearby is the deputy marshal who notified the ATF case agent of the firearms denial that led to the current case, and she also took part in the APD and United States Marshals Service interview of Mr. Channon while he was at Central Desert Behavioral Health Hospital. *Id.*

None of these facts, together or separately, establish actual vindictiveness. They draw no explicit connection between Mr. Channon's exercise of his appellate rights and the decision to prosecute him years later. *See Rodella*, 59 F. Supp. 3d at 1350. And Mr. Channon states that he "does not invoke the presumption recognized in *United States v. Goodwin*, 457 U.S. 368 (1982)." Doc. 68 at 7. I understand this to mean that he does not argue that there is a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness. Because Mr. Channon has not demonstrated actual vindictiveness and does not argue for the application of a presumption of vindictiveness, no avenues for a vindictive prosecution argument remain. I therefore recommend that the Court deny Mr. Channon's motion insofar as it seeks dismissal of the indictment for prosecutorial vindictiveness.

In the alternative, Mr. Channon requests limited discovery based on the "specific gaps" in the series of events he describes. Doc. 68 at 7, 9. He seeks to know "how Bridges first received notice, who decided to bring the charge, or whether the decision was materially influenced by retaliation for Defendant's prior exercise of legal rights"—specifically, "whether the earlier federal security investigation affected how the April 2026 allegation came to the attention of ATF

or how the decision to charge was made." *Id.* at 8. He also seeks confirmation from the Court "that the indictment was returned in accordance with Rule 6(f), including any permitted video-teleconference procedure, and, if the record of the return is sealed, that [the Court] so state." *Id.* at 9. He requests that the Court order the United States to file a declaration regarding certain facts related to these inquiries. *Id.* at 9–10. In short, he is requesting discovery of information related to the United States' decision to prosecute him.

As the Supreme Court has observed, "[i]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). Nor are criminal defendants "entitled to judicial oversight or review of the decision to prosecute." *Albright v. Oliver*, 510 U.S. 266, 274 (1994) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)). Indeed, a defendant does not have a general constitutional right to discovery in a criminal case, *United States v. Price*, 75 F.3d 1440, 1445 (10th Cir. 1996), although the government must disclose certain information specified under the Federal Rules of Criminal Procedure and various cases, *see, e.g.*, *Brady v. Maryland*, 373 U.S. 83 (1963); FED. R. CRIM. P. 16.

Against this background, the Tenth Circuit has upheld a district court's decision to deny a defendant discovery and an evidentiary hearing on a vindictive prosecution claim when the defendant failed to establish a presumption of vindictiveness. *United States v. Portillos*, 714 F. App'x 889, 893 (10th Cir. 2017); *see also Rodella*, 59 F. Supp. 3d at 1362 n.8 ("Several courts have indicated that a defendant is not entitled to discovery or to an evidentiary hearing on a vindictive prosecution claim until the defendant first presents some evidence tending to show the

existence of the essential elements of a vindictive prosecution claim." (internal quotation marks omitted) (citing cases)). As a result, even though Mr. Channon claims he does not argue that the presumption of vindictiveness is applicable, I consider whether Mr. Channon has presented evidence sufficient to establish a presumption of vindictiveness to determine whether discovery is appropriate on this issue.

I recommend that the Court find that Mr. Channon has not produced sufficient evidence to demonstrate "a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right." *Raymer*, 941 F.3d at 1042. "Vindictiveness may not be presumed from the mere appearance of vindictive motives." *Portillos*, 714 F. App'x at 893 (citation omitted). As an initial matter, AUSA Messec's analogy to threat cases was a legal argument in support of a broader point regarding whether intentional actions by parties to a judge could create an obligation for the judge to recuse—not an indication that Mr. Channon posed any threat to the judge or anyone else. Doc. 58 at 48. She wrote her argument as an analogy meant to aid in understanding how a case which does not control in a particular instance still may provide guidance, which is perfectly appropriate in a legal brief; in fact, Mr. Channon engages in a similar analogy when he discusses case law on selective prosecution discovery. *See* Doc. 68 at 7.

AUSA Messec's report of a possible threat[1] to her safety based on a phone call from Ms. Channon also was appropriate and does not serve as a basis for vindictive prosecution. This

[1] Mr. Channon's assertions that Ms. Channon never quoted any verbal threat against AUSA Messec parses the matter unreasonably finely. *See* Doc. 68 at 8 ("the body of [AUSA Messec's] email quotes no threat by Defendant"). A threat is not only a verbal statement of intention to harm; it also may be a risk or danger in the absent of any statement, such as a hurricane posing a threat to the safety of a geographic area. *See Threat*, DICTIONARY.COM, https://www.dictionary.com/browse/threat [perma.cc/4XDU-GJT3] (last visited November 9, 2026). AUSA Messec reported to security personnel that Mr. Channon posed a potential threat to

report and the ensuing investigation[2] of Mr. Channon before he was released from the hospital do not demonstrate any prosecutorial bias against Mr. Channon in this case or any intention to punish him for his decision to exercise his legal right to appeal his prior fraud case. The underlying fraud case is mentioned only briefly in AUSA Messec's email as context for how AUSA Messec knew the Channons; the appeal is not mentioned at all. Doc. 68 at 17. Mr. Channon provides no evidence that supports an inference that anyone's conduct over the course of this series of events had anything to do with his decision to appeal the fraud case. Rather, the record demonstrates that AUSA Messec received information about a danger a former defendant of hers may pose, she shared that information with appropriate individuals, the information was disseminated to law enforcement, and law enforcement investigated the possibility of danger. The appeal of the fraud case is simply irrelevant. Accordingly, I recommend that the Court DENY Mr. Channon's motion insofar as it seeks discovery and an evidentiary hearing.

**CONCLUSION**

I recommend that the Court DENY Mr. Channon's motion (Doc. 68) in its entirety.

---

her safety, not that Mr. Channon had made explicit threats against her. The text of her email makes this distinction clear.

[2] The fact that some documentation misstates the nature of the potential danger law enforcement was investigating (e.g., referring to Mr. Channon as "threatening" or "stalking" AUSA Messec, *see* Doc. 68 at 19; Doc. 58 at 26) has no apparent connection to Mr. Channon's decision to appeal his fraud case.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id.* In other words, if no objections are filed, no appellate review will be allowed.**

Laura Fashing

LAURA FASHING
UNITED STATES MAGISTRATE JUDGE